**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| CHARLES MAMOU, JR., | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL NO. H-14-403 |
| | § | |
| WILLIAM STEPHENS, | § | |
| Director, Texas Department of | § | |
| Criminal Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**ORDER**

In 1999, Charles Mamou, Jr. was convicted of capital murder and sentenced to death.
Mamou seeks federal habeas corpus relief after an unsuccessful appeal and collateral attack in the
state courts.   Mamou has filed an Application for Authorization of Funds for Expert and
Investigative Assistance.  He  asks for $29,020 to aid in the preparation of a federal habeas petition.
(Docket Entry No. 18).  The money is to retain the services of an investigator, a ballistics and
firearms expert, a mitigation investigator, a future-dangerousness expert, and a legal expert.  The
respondent, William Stephens, opposes Mamou's motion.  (Docket Entry No. 19).  Based on the
pleadings, the motion and response, the record, and the applicable law, and for the reasons set out
below, the court denies Mamou's motion for funds.

**I.    The Applicable Legal Standards**

Federal law entitles indigent capital petitioners to the appointment of counsel "in any post
conviction proceeding under [28 U.S.C. §] 2254."  18 U.S.C. § 3599(a)(2); *see also Martel v. Clair*,
565 U.S. ___, 132 S. Ct. 1276, 1285 (2012).  The Supreme Court has held that the right to the
appointment of counsel "includes a right to legal assistance in the preparation of a habeas corpus

application."  The right "adheres prior to the filing of a formal, legally sufficient habeas corpus petition."  *McFarland v. Scott*, 512 U.S. 849, 855-56 (1994).

The right to funds, however, is not unlimited.  "The granting of funds . . . is a discretionary decision to which [a petitioner] does not have a mandatory right.*"  Smith v. Dretke*, 422 F.3d 269, 289 (5th Cir. 2005).  A "court may authorize the defendant's attorneys to obtain [investigative or expert] services on behalf of the defendant" only "[u]pon a finding that investigative, expert, or other services are *reasonably necessary* for the representation of the defendant[.]"  18 U.S.C.A. § 3599(f) (emphasis added).[1]   A petitioner must show "that he ha[s] a substantial need" for investigative or expert assistance.  *Clark v. Johnson*, 202 F.3d 760, 768 (5th Cir. 2000); *see also Riley v. Dretke*, 362 F.3d 302, 307 (5th Cir. 2004).

Several factors guide a court's discretion in reviewing requests for funds to prepare and litigate a federal habeas petition.  First, funds are not reasonably necessary to develop claims for which federal habeas review is unavailable.  This includes claims that are not exhausted; the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") precludes habeas relief on any claim that an inmate has not presented to the state courts.  *See* 28 U.S.C. § 2254(b).  It also includes claims that an inmate has presented his claims to the state court in a procedurally improper manner, or for which no state avenue of relief remains available; such claims are procedurally barred from federal habeas review.  *See Dretke v. Haley*, 541 U.S. 386, 392-93 (2004); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  The Fifth Circuit has affirmed the denial of funding when a petitioner has "'failed to supplement his funding request with a viable constitutional claim that is not procedurally barred[.]'"  *Wilkins v. Stephens*, 560 F. App'x 299, 315 (5th Cir. 2014) (quoting *Riley*, 362 F.3d at

---

[1]      Mamou argues that the respondent does not have standing to contest an inmate's request for funding. The court addressed the respondent's standing in the prior order on *ex parte* proceedings, (Docket Entry No. 17 at 3, n.1), and Mamou does not provide a basis for the court to reconsider its reasoning in the context of a funding request.

307); *see also Brown v. Stephens*, ___ F.3d ___, 2014 WL 3893044 (5th Cir. Aug. 8, 2014); *Smith v. Dretke*, 422 F.3d 269, 288 (5th Cir. 2005); *Turner v. Johnson*, 106 F.3d 1178, 1184 n.16 (5th Cir. 1997).

Mamou filed a *pro se* habeas application months after his initial state habeas application. State habeas counsel later filed a supplemental application. Both pleadings raised new claims. Texas statutory law treats any pleading filed outside a strict statutory period as a successive habeas action. *See* TEX. CODE CRIM. PRO. art. 11.071 § 5(f). Because Mamou filed two habeas applications outside the period for amendment, the state courts found that Mamou defaulted consideration of any new claims. The state-imposed procedural bar limits federal review of those claims. *See Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309, 1316 (2012) (stating that federal habeas review is not available for claims that "a state court declined to hear because the prisoner failed to abide by a state procedural rule"). The respondent argues that the court should deny funding for the claims raised by Mamou's successive habeas applications.

Second, funds are not "reasonably necessary" to develop evidence that was not presented to the state courts. Once a state court resolves the merits of a petitioner's arguments, Supreme Court precedent limits federal review "to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011); *see also Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 780 (2011) ("[S]tate courts are the principal forum for asserting constitutional challenges to state convictions[.]"). Because "*Pinholster* prohibits a federal court from using evidence that is introduced for the first time" in federal court, *Blue v. Thaler*, 665 F.3d 647, 661 (5th Cir. 2011), additional factual development is irrelevant the adjudication of exhausted claims.

Third, a federal court must look to the substance of a petitioner's proposed investigation to decide if it will support a potentially viable claim. Courts should not allocate funds that would "'only support a meritless claim'" or "'would only supplement prior evidence.'" *Woodward v. Epps*, 580 F.3d 318, 334 (5th Cir. 2009) (quoting *Smith*, 422 F.3d at 288).

Finally, federal law establishes a statutory cap on the funds a district court may allocate. *See* 18 U.S.C. § 3599(g)(2) (limiting the grant of funds to $7,5000 without approval by the chief judge of the circuit). Mamou requests $29,020, an amount nearly four times over the statutory presumptive maximum. To justify this amount, Mamou must show that the services he requests are of "unusual character or duration." 18 U.S.C. § 3599(g)(2).

Mamou's requests for funds are analyzed under these considerations.

## II.    Analysis

### A.    Funds for an Investigator to Develop an Actual Innocence Claim

Mamou wants funds to retain an investigator to prove that he is actually innocent of capital murder. The jury convicted Mamou of killing seventeen-year-old Mary Carmouche during a kidnaping. Witnesses at trial testified that Mamou and a friend intended to steal cocaine from a group of men during a planned narcotics transaction. When the drug deal fell apart, Mamou began firing his gun. He killed one man, shot others, stole a car, and kidnaped Carmouche. She was not seen alive again. Witnesses said that they later helped Mamou search the stolen car for drugs and wipe it down to remove fingerprints. Mamou told those witnesses that he had sexually assaulted Carmouche and then killed her. While some ballistics evidence tied the bullets used to kill Carmouche to those Mamou fired, the strongest trial testimony came from those involved in the narcotics transaction and in helping Mamou wipe down the car. Mamou bases his actual innocence

4

argument on the fact that he was the only one the State charged with a crime resulting from the events leading up to Carmouche's murder.

On federal review, a criminal defendant's claim of actual innocence arises in two distinct contexts. The first context is not viable. It is a free-standing claim that the defendant is, as a matter of fact, innocent of the charged offense, *see Herrera v. Collins*, 506 U.S. 390, 404 (1993). Mamou disclaims any intent to raise such a claim. The second context is as a gateway to collateral review of a forfeited constitutional claim or to overcome a procedural default under the standard outlined in *Schlup v. Delo*, 513 U.S. 298 (1995). The Supreme Court has "recognized a narrow exception to the [procedural bar doctrine] where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." *Haley*, 541 U.S. at 393. Prisoners "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327). "Examples of new, reliable evidence that may establish factual innocence include exculpatory scientific evidence, credible declarations of guilt by another, trustworthy eyewitness accounts, and certain physical evidence." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999).

Mamou claims to be actually innocent because he believes that the prosecution did not disclose deals with the witnesses whose testimony linked him to the victim's murder. Mamou argues that the witnesses involved in the drug deal and the subsequent events "[a]ll gave self-serving testimony that implicated Mr. Mamou in the drug deal, yet they were also involved." (Docket Entry No. 18 at 13). Mamou asserts that he "has reason to believe that these witnesses were all given inducements and deals by the State to testify as they did and that these inducements and deals were concealed from the defense[.]" (Docket Entry No. 18 at 13).

5

At trial, neither party asked the challenged witnesses whether they testified under an agreement with the State. Mamou did not develop an actual-innocence argument in state court. In a related claim under *Brady v. Maryland*, 373 U.S. 83 (1963), Mamou alleged in his successive state habeas application that the State had failed to disclose plea agreements with witnesses. Mamou, however, did not provide evidence that any such agreements existed. Instead, Mamou summarily argued that "it is highly unlikely given the nature and seriousness of the offense that these men would have voluntarily implicated themselves in the entire transaction up to and including the murder Mary Carmouche absent some sort of agreement regarding the future criminal liability." State Habeas Record at 228. The Texas Court of Criminal Appeals found that Mamou's *Brady* claim was procedurally barred.

Rather than focus on a *Brady* claim, Mamou now frames his allegations as an actual innocence argument. He provides few details. Instead, he alleges that "[i]t is entirely unreasonable to believe that these witnesses, who were all engaged in serious criminal activities, testified for the State and implicated themselves in serious crimes, including drug dealing and/or murder, without any such inducements for them to do so." (Docket Entry No. 18 at 13-14). Mamou is speculating that agreements actually existed. Such speculation is insufficient under clear judicial precedent. *See Bell v. Watkins*, 692 F.2d 999, 1010 (5th Cir. 1982) (stating that, even when a court may "understand [a defendant's] suspicions" that the prosecution entered into "a secret deal with witnesses," he "must rely on more than mere inference drawn from the circumstances of the trial in order to make out his claim" that the prosecution knowingly adduced false testimony).

Mamou can be innocent only if witnesses lied about him kidnaping Carmouche and the incriminating statements he made later, but he offers no details about what testimony the witnesses allegedly fabricated. Mamou's proposed actual innocence argument presupposes that the State

6

encouraged these witnesses to lie on the witness stand.  Mamou has not provided any reasonable basis to believe that the State made deals requiring the witnesses to commit perjury.  Absent some suggestion that the State hid agreements with witnesses to manufacture testimony, funding is not reasonably necessary to the fair development of Mamou's claim.

### B.    Funds for An Investigator to Develop Claims for Ineffective Assistance

In his initial state habeas application, Mamou claimed that trial counsel provided ineffective representation under *Strickland v. Washington*, 466 U.S. 668 (1984) on several grounds.  Mamou raised additional ineffective assistance claims in his *pro se* successive habeas application.  The state habeas court denied the merits of the claims included in Mamou's initial application and found those in his *pro se* application to be procedurally barred.  Mamou now seeks funds to augment the *Strickland* claims he raised in state court.

When a state court has resolved the merits of an inmate's claims, *Pinholster* prevents federal courts from considering facts outside the state-court record.  Insofar as Mamou requests funding to support for the claims he advanced in his initial state habeas application, additional factual development is not reasonably necessary.

Mamou also seeks investigative funds to develop further the *Strickland* claims he defaulted in his successive state habeas applications.  Mamou relies on *Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309, 1320 (2012) to argue that he can overcome the bar procedurally deficient claims.  In *Martinez*, the Supreme Court held that ineffective assistance by a state habeas attorney may amount to cause under some circumstances.  *See also Trevino v. Thaler*, ___ U.S. ___, 133 S. Ct. 1911 (2013) (applying *Martinez* to cases arising from Texas courts).  To meet the cause exception under *Martinez*, an inmate must prove that his habeas attorney's representation fell below the standards established in *Strickland* and show that his underlying ineffective-assistance claim "has some

merit[.]" *Martinez*, ___ U.S. ___, 132 S. Ct. at 1318; *see also Crutsinger v. Stephens*, 540 F. App'x 310, 317 (5th Cir. 2013); *In re Sepulvado*, 707 F.3d 550, 556 n.12 (5th Cir. 2013).

Mamou summarily argues that *Martinez* should allow this court to reach the merits of his defaulted claims for ineffective assistance of trial counsel. Mamou does not explain how state habeas counsel's representation fell below expected standards. Without additional information about whether Mamou possesses a viable argument to overcome any procedural bar, there is no basis to find that the requested funding is reasonably necessary.

Moreover, Mamou has not provided sufficient detail to enable the court to decide that investigative assistance is reasonably necessary to support a viable and potentially meritorious ineffective assistance claim. Mamou lists potential ineffective assistance claims, but he provides few details about what his prior attorneys have done and what more an investigator could or should do. The pending request asks for funds to retain an investigator who will locate and obtain documents,[2] interview family members and law enforcement witnesses, and interview Mamou on death row. Mamou does not describe how that proposed investigation will meaningfully augment his anticipated claims. For example, Mamou asks for funds to "locate and interview relevant guilt and punishment phase lay witnesses." (Docket Entry No. 18 at 17). He does not identify any of the witnesses who need to be interviewed or what he expects the interviews will uncover. Without indicating a specific need, Mamou has not shown that funding is reasonably necessary for his ineffective assistance claims.

### C. Funds for a Ballistics Expert

---

[2] Mamou links an investigator's discovery of documents to his requests for expert assistance. Mamou argues that the documents "will eventually be reviewed by and serve as the basis for the opinions of the expert witnesses petitioner will rely on to aid in the development of claims to be raised in the petition." (Docket Entry No. 18 at 15). As discussed below, however, Mamou has not yet shown that expert assistance is reasonably necessary for development of his claims. Accordingly, Mamou has not shown that investigative funds are necessary as a preliminary step toward expert assistance.

Mamou requests funds to retain an expert to review the ballistic evidence presented at his trial. In his supplemental habeas application, Mamou argued that the State expert's testimony was patently unreliable and therefore inadmissible. Mamou now seeks funds to have a firearms/ballistics expert review the State expert's testimony and "render an opinion on the reliability of this testimony as it relates to the specific facts of Mr. Mamou's case." (Docket Entry No. 18 at 19).

The Court of Criminal Appeals found that Mamou forfeited consideration of his argument about the ballistics evidence by raising it in a successive habeas application. Federal law does not authorize funds to develop a procedurally deficient habeas claim. *See Woodward*, 580 F.3d at 334.

### D.     Funds for a Mitigation Expert

Mamou asks this court to fund an investigation into potential mitigating evidence that was not presented at trial. He argues that "[t]he punishment phase defense testimony was not extensive. It does not appear that trial counsel compiled a social history of Mr. Mamou or that any extensive investigation of his background was ever conducted." (Docket Entry No. 18 at 20). Mamou provides no detail about what mitigating evidence his trial attorneys ignored or neglected, or what additional evidence is likely to affect the outcome. A petitioner is not entitled to funds when he has "offered little to no evidence that the investigative avenues [habeas] counsel propose[s] to take hold any significant chance for success." *Wilkins v. Stephens*, 560 F. App'x 299, 315 (5th Cir. 2014). Federal law only guarantees funds for reasonably necessary investigations; federal courts have no obligation to authorize fishing expeditions.

### E.     Funds for an Expert on Future Dangerousness

Mamou seeks funds to retain a psychologist who will evaluate whether he is a future danger to society. According to Mamou, the "penalty phase testimony focused almost entirely on the issue of future dangerousness." (Docket Entry No. 18 at 20). Mamou argues that "it is vital . . . to have

access to an expert on future dangerousness who can refute and show the limitations of the State's case for future dangerousness."  (Docket Entry No. 18 at 20).

Mamou hopes that an evaluation will provide additional support for a claim he raised on state appellate review.  On direct appeal, Mamou exhausted a claim that the State had not shown beyond a reasonable doubt that he would be a future danger to society under *Jackson v. Virginia*, 443 U.S. 307 (1979).  In *Jackson*, the Supreme Court noted that the Due Process Clause of the Fourteenth Amendment guarantees the right to be free from criminal conviction "except upon sufficient proof – defined as evidence necessary to convince a trier of fact beyond a reasonable doubt as to the existence of every element of the crime." *Id.* at 316.  However, a reviewing court examines only "the record evidence adduced at the trial" in determining whether sufficient evidence existed to support the jury's verdict. *Id.* at 324.  Because *Jackson* itself precludes consideration of new factual evidence in adjudicating a claim of insufficiency of the evidence, and Mamou has not otherwise shown that expert assistance is necessary, the requested funds to retain a future-dangerousness expert are not reasonably necessary.

### F.   Funds for a Legal Expert

Finally, Mamou wants funds to retain an attorney "familiar with the trial of Texas capital murder cases, and common practices in Texas at the time of [his] trial" who could  "compar[e] trial counsel's performance to those generally prevailing in the community at the time of the trial." (Docket Entry No. 18 at 21).  As the respondent points out, the determination of whether trial counsel's representation complied with constitutional standards is an issue for the courts to decide, not an attorney, and an attorney affidavit is not relevant.  As another court observed:

> [I]t would not matter if a petitioner could assemble affidavits from a
> dozen attorneys swearing that the strategy used at his trial was
> unreasonable.  The question is not one to be decided by plebiscite, by

10

affidavits, by deposition, or by live testimony.  It is a question of law
to be decided by the state courts, by the district court, and by [the
circuit], each in its own turn.

*Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998); *see also Johnson v. Quarterman*,

306 F. App'x 116, 129 (5th Cir. 2009).  The court finds that the requested funds to retain a legal

expert are not reasonably necessary.

**III.    Conclusion**

Mamou's motion for investigative and expert funding is denied.

SIGNED on August 28, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

11