# Exhibit 20



lenovo FOR THOSE WHO DO

STILL HERE. STILL AWESOME!
Are you ready to DO more?   LET'S GO

NEWS ALERTS • SIGN UP NOW!

Subscribe to the Houston Chronicle | Shopping | Classifieds | Obits | Place an Ad | La Voz

Like 121k   Register | Sign In

76°F  Partly Cloudy | Houston Weather

Search

◉ Chron.com  ○ Local Directory

| Home | Local | US & World | Sports | Business | Entertainment | Lifestyle | Jobs | Cars | Real Estate |

News » Houston & Texas

# Fingerprint error led to four months behind bars

Ironworker jailed in 1996 as a year not covered in review or lab

MOISES MENDOZA and JAMES PINKERTON
, HOUSTON CHRONICLE | June 19, 2010

Comments 0    E-mail    Print    **Tweet** 0    +1    

## Coffee Bean Direct Deal

coffeebeandirect.com/Deal

Buy Fair Trade Coffee Online $5 Off Purchases $30+. Code: CBDEAL

The Mirabelle Cookbook



Buy Now

$107.32

Coffee Bean Direct Deal

What's the #1 hotel in Dubai?

Authorities on Friday identified an ironworker with no criminal record as the suspect held in jail for four months in 1996 after the Houston Police Department's troubled fingerprint analysis unit wrongly tied his fingerprint to a homicide, records show.

In July that year, two Houston fingerprint analysts identified Manuel Quinta Guerra's fingerprint on a bloody fork found at the scene of a slaying in southwest Houston. The next day he was arrested, booked into the Harris County Jail and held on $20,000 bail. Guerra wasn't released until December, when the FBI confirmed the print belonged to someone else, according to the Harris County District Attorney's Office, which discussed the case Friday. The killing is still unsolved.

HPD leaders were not aware of the misidentification until the Houston Chronicle brought it to their attention this week.

The discovery raises questions about whether there could have been more misidentifications by the unit in the 1990s, although police say they don't know of any.

It also focuses attention on whether the department's review of fingerprint evidence spanning 2004-2009 should be expanded. It was launched after an audit last year found lab employees were missing viable fingerprints on evidence. Police say they know of no misidentifications except for Guerra's, although they have identified vast technical errors in the unit's analysis of fingerprints.

Fingerprint analyst **Rafael Saldivar**, one of the people responsible for the 1996 misidentification, received a reprimand this spring for destroying notes. He was also reprimanded in writing in 1997 for his role in the misidentification.

| How To Fix "Error 404" | Goodyear Tires | Top 7 Mattresses |
| --- | --- | --- |
| 404-error-fixed.com | goodyear.com | compareitless.c... |
| Takes only 2 minutes. (Recommended). | Find Tires That Fit Your Vehicle. Search By Vehicle or Tire Size | 2015 Bestselling Mattresses Compare Latest Deals & Save Big! |

Police will not say whether they'll expand the review of fingerprint evidence and declined comment Friday on Guerra, saying they were reviewing the case.

Guerra, who has lived at multiple addresses over the years, could not be immediately located. The defense attorney who represented him in the case has died.

**Former roommate killed**

BANANA REPUBLIC

50% Off Select Styles
+ 40% Off Purchase
Ends Today



STAPLES

to do more for your business.

**Latest Videos**

Route In Acres Homes



**More videos:**

  

Guerra, then 33, came under suspicion because he was a former roommate of Lawrence Perham, who was found choked and stabbed to death July 7, 1996, in the 5800 block of Dashwood, said Bill Hawkins, the prosecutor who dealt with the case.

The bloody fork — it's not clear if it was a murder weapon - was the only object police could lift prints from.

Guerra voluntarily submitted his fingerprints as part of the homicide investigation on July 23, the same day that analysts misidentified a print found on the fork as his.

On July 24 he was arrested and booked, with bail set at $20,00. That's where he stayed until the case was dismissed - he couldn't afford the bail, court records show.

There were almost immediate questions about the analysis, according to documents provided by the District Attorney's Office.

One police fingerprint examiner called the FBI for help and was told in October that there was no match. But he asked for a second opinion, and it was not until late November that officials finally decided Guerra was innocent, records show.

### No other evidence
Guerra was released in December, and the murder charges were dismissed.

The print was the sole piece of evidence that supposedly tied Guerra to the slaying, said Hawkins, who added he didn't know of another case of fingerprint misidentification.

"Its real unusual, and I've been here over 27 years," Hawkins said. "You have a situation where it's someone known to the victims, but the case was filed based on the fingerprint identification."

The revelation of the case has prompted a trail of alarm from community leaders and defense attorneys this week, who questioned why the misidentification was not previously revealed to the community and urged police to look deeper.

"These problems didn't just start on a neat line on the calendar six years ago," the past president of the Harris County Criminal Lawyers Association, W. Troy McKinney, said Friday.

District Attorney Pat Lykos also joined in the chorus of frustration, although she pointed to the positive.

"It's absolutely distressing that that occurred," Lykos said Friday, "but the upside is the fact the examiners had qualms about their identification and pursued further testing. That's the good news."

*moises.mendoza@chron.com*

*james.pinkerton@chron.com*

| If you're 50+ read this | Coffee Bean Direct Deal | How To Fix "Error 1603" |
|---|---|---|
| instaflex.com | coffeebeandirect.com/Deal | 1603-error-toolkit.com |
| Hear what doctors have to say about the latest joint relief trick | Buy Fair Trade Coffee Online $5 Off Purchases $30+. Code: CBDEAL | Takes only 2 minutes. (Recommended). |

Comments 0    E-mail    Print    **Tweet** 0    S+1 0

**MOISES MENDOZA and JAMES PINKERTON
, HOUSTON CHRONICLE**

**You** Might Also Like

   

| Pros & Cons of the Wearable Camera | How I learned 9 languages & am learning even more | Ashton Kutcher's Terrifying Past Is About to Catch Up With... | High-Speed Police Chase Has A Surprise Ending: You'll Never... |
|---|---|---|---|
| Motorola Solutions | Babbel | Answers Daily | ViralNova |

**From** Around the Web

· **This Simple App Will Replace Human Financial Advisors.** (Business Insider)

**We** Recommend

· Retired doctor busy in second career as mohel

· Court weighs if lap dance is tax-exempt art

**You** Might Also Like


These Beautiful Bracelets Were Made From Guns Taken From City Streets
(CoExist)


Couple Heartbroken as Adopted Baby They Were Forced to Return to Birth Mom Dies...
(Latest.com)


You Might Be Surprised to Learn What Your Last Name Can Tell You
(Archives)


Mapping Makes Asset Management Awesome
(CIO)




What You Missed: Channing Tatum Reunites with Imaginary Friend!


What Not to Miss: Letterman Visits Regis on 'Late Late Show'?


This Forgotten Day in Houston: Remembering the Heroes of Apollo 1

**Stay** Connected

    

**Top** Stories

Just released video shows employee after shooting at robbers

An unusual shadow creeps on Mars

Time running out to have your say on space travel's future

Ex-NFL star to face rape charges

Texas parents want to change the name of this high school

See what Taylor Swift deleted from her hacked Instagram account

Texas company announces massive bonus for employees

These are 2015's best jobs

Texas girl shot by cops; Anonymous threatens payback

Carjacker shoots man at gas pump

12 signs police use to spot a drunken driver

'Miracle cat' rises from the dead five days after burial (Warning: Graphic photos)

**Hot** Topics



lenovo FOR THOSE WHO DO.

STILL HERE. STILL AWESOME!
Are you ready to DO more? LET'S GO

NEWS ALERTS • SIGN UP NOW!

Subscribe to the Houston Chronicle | Shopping | Classifieds | Obits | Place an Ad | La Voz

Like 121k Register | Sign In

76°F Partly Cloudy | Houston Weather

Tuesday January 27, 2015

Search

Chron.com Local Directory

Home | Local | US & World | Sports | Business | Entertainment | Lifestyle | Jobs | Cars | Real Estate

News > Houston & Texas

# Botched fingerprint work raises questions on HPD

Botched fingerprint work raises questions

MOISES MENDOZA and JAMES PINKERTON
, Copyright 2010 Houston Chronicle | June 15, 2010

Comments (0)    E-mail    Print    Share 1    Tweet 0    Set 4

Coffee Bean Direct Deal
coffeebeandirect.com/Deal
Buy Fair Trade Coffee Online $5 Off Purchases $30+  Code: CBDEAL

Photo by James Nielsen / Chronicle

A sample at the HPD fingerprint unit is magnified. Thousands of cases from 2004 to 2009 have been reviewed.

The Mirabelle Cookbook

AbeBooks

$107.32

The Houston Police Department says it hasn't found any suspects wrongly identified by its troubled fingerprint analysis unit in a review of fingerprint evidence from 2004 to 2009.

But a misidentification from 1996 uncovered by the Houston Chronicle raises questions about whether there were other misidentifications at the fingerprint lab and whether the costly review should be expanded to cover more years.

A person was wrongly incarcerated in a capital murder investigation after their fingerprint was identified as that of a suspect, according to disciplinary records recently obtained through a public records request.

Because the document — a written reprimand — had little information, the identity of the person and facts of the case weren't immediately clear. It's also unclear whether the wrongly identified suspect was convicted or how much time he or she spent in jail.

Police said they were attempting to locate the file and didn't have any information about it. A spokeswoman for District Attorney Pat Lykos said she was unavailable to comment.

STILL HERE. STILL AWESOME!
Are you ready to DO more?
lenovo LET'S GO

STILL HERE. STILL AWESOME!
Are you ready to DO more?
lenovo LET'S GO

AbeBooks.com

Latest Videos

More videos:

The fingerprint examiner who made the wrong identification, Rafael Saldivar, was issued the written reprimand in April 1997 for the mistake. Saldivar, however, kept analyzing fingerprints until he was put on leave last year during an internal investigation into problems at the lab. He retired this spring after receiving another written reprimand for destroying "original handwritten notes instead of keeping them as required during the examination or re-examination of fingerprint evidence."

## Coffee Bean Direct Deal

coffeebeandirect.com/Deal

Buy Fair Trade Coffee Online $5 Off Purchases $30+. Code: CBDEAL

Two other members of the unit were investigated but not reprimanded. Their lawyer has said they feel like scapegoats.

In an interview Tuesday, Tim Oettmeier, the executive assistant chief in charge of the fingerprint unit, said he had been unaware of the misidentification and wants to learn more about the case before deciding whether to extend the review of fingerprint cases to the 1990s.

**Concern on council**
"I don't want to speculate on that until I read the case, and I see what the facts are," he said.

He said he couldn't explain why he didn't know about the misidentification.

But the discovery caused immediate alarm among City Council members and defense attorneys who were also previously unaware.

Forensic evidence expert and Houston defense attorney Bob Wicoff said it was "alarming — it's a pretty scary scenario."

"Of course it's of concern," said Wicoff, a member of the HPD crime lab review panel. "I think it might be a good idea for HPD to undertake a review of all the convictions touched by these fingerprint people to see if these convictions were compromised."

City Councilwoman Jolanda Jones agreed.

"I believe we should go back and retest, but I don't think they (HPD) should be in charge over who retests," Jones said. "It's like letting the fox guard the henhouse."

An aide for Mayor Annise Parker said she hadn't been briefed on the situation and couldn't comment.

Through his attorney Earl Musick, Saldivar declined to comment.

"He's not interested in explaining any of that stuff," Musick said. "He's retired from the city and just wants to get on with his life."

**Consultant expenses**
As for the allegations of note destruction, Musick said Saldivar was given inadequate training and didn't know he needed to keep his old notes.

City Council today is slated to discuss giving the police department $2.3 million to allow consultants to continue operating the department's fingerprint unit through the next fiscal year, which begins July 1. That would bring the total paid to Ron Smith & Associates, based in Mississippi, to $5.2 million.

The consultants largely took over analyzing fingerprints after an audit last year revealed police fingerprint analysts were failing to yield viable fingerprints on evidence. Consultants have been working through a backlog of cases and performed the review of more than 4,300 violent crime cases from 2004 to 2009.

Though they found no wrongful identifications by fingerprint analysts in those cases — including in Saldivar's — they did find technical errors 62 percent of the time, police said.

Consultants are also supposed to help to retrain fingerprint analysts and help fix the unit. But five of the six police personnel being trained to analyze prints have either quit or were deemed incompetent, police said.

*moises.mendoza@chron.com*
*james.pinkerton@chron.com*

## Ask A Lawyer Now - Free

lawyerslegallaws.com/Ask-A-L...

Our Lawyers Answer Your Questions. Free & Secure Service. Ask Away!

## DNA Genealogy Test

23andme.com/GenealogyTest

The World's Largest Genealogy DNA Service. Join Today. Now Only $99.

## Top 7 Mattresses

comparestores.net/Mattress

2015 Bestselling Mattresses. Compare Latest Deals & Save Big!

Comments 0     E-mail     Print     **Share** 1     Tweet 0     X-1 0

## You Might Also Like


**These Beautiful Bracelets Were Made From Guns Taken From City Streets**
(CoExist)


**Apparently, Prison Has Turned Phil Spector Into Gollum**
(Playbuzz)


**Raw: 9-year-old boy stabbed in Staten Island**
(Dailymotion)


**Jailed and rich: Where does their cash go?**
(Bankrate.com)




**What You Missed: Channing Tatum Reunites with Imaginary Friend!**


**What Not to Miss: Letterman Visits Regis on 'Late Late Show'?**


**This Forgotten Day in Houston: Remembering the Heroes of Apollo 1**

## Stay Connected

    

## Top Stories

Just released video shows employee after shooting at robbers

An unusual shadow creeps on Mars

Time running out to have your say on space travel's future

Ex-NFL star to face rape charges

Texas parents want to change the name of this high school

See what Taylor Swift deleted from her hacked Instagram account

Texas company announces massive bonus for employees

These are 2015's best jobs

Texas girl shot by cops; Anonymous threatens payback

Carjacker shoots man at gas pump

12 signs police use to spot a drunken driver

'Miracle cat' rises from the dead five days after burial (Warning: Graphic photos)

## Hot Topics

# Exhibit 21

Cause No. 800112-A

EX PARTE                          §        IN THE 179th DISTRICT COURT

                                  §        OF

CHARLES MAMOU, JR.,               §        HARRIS COUNTY, TEXAS
        Applicant

## ORDER FOR FILING AFFIDAVIT

Having considered the applicant's application for writ of habeas corpus, the

Court **ORDERS** counsel WAYNE T. HILL, KURT BUDD WENTZ, and FLOYD

W. FREED to file affidavits in the above-captioned cause: (1) summarizing the

actions taken to represent the applicant in cause no. 800112; (2) responding to the

allegations of ineffective assistance of counsel contained in the application for writ

of habeas corpus; and (3) specifically responding to the allegations that counsel:

- trial counsel allegedly failed to object to the testimony of Yolanda Williams and Patricia Dodson as victim impact evidence concerning the effects of unadjudicated extraneous offenses against persons not named in the indictment;

- trial counsel allegedly failed to properly object to the prosecutor's argument and questioning concerning the possibility that the Texas Legislature might change the laws concerning parole eligibility;

- appellate counsel allegedly failed to raise the issue on direct appeal that the applicant's trial counsel was ineffective for allegedly failing to object to victim impact evidence of Yolanda Williams and Patricia Dodson; and

- appellate counsel failed to raise an issue on appeal that comported with trial counsel's objection to the prosecutor's argument and questioning concerning the possibility that the Texas Legislature might change the laws concerning parole eligibility.

Counsel WAYNE T. HILL, KURT BUDD WENTZ, and FLOYD W. FREED are **ORDERED** to file said affidavits with the Appellate Division of the District Clerk's Office within **TWENTY (20) DAYS** of the signing of this order.

THE CLERK IS **ORDERED** to send a copy of this order to the applicant, a copy of this order to the Respondent, and to serve copies of this order, the applicant's application, and the Respondent's answer to:

| | |
|---|---|
| Mr. Wayne T. Hill | Mr. Kurt Budd Wentz |
| Attorney at Law | Attorney at Law |
| 4615 Southwest Freeway, Suite 600 | 5629 FM 1960, Suite 115 |
| Houston, Texas 77027-0000 | Houston, Texas 77069-4214 |

Mr. Floyd W. Freed
Attorney at Law
6630 Cypresswood, Suite 600
Spring, Texas 77379

When the affidavits of WAYNE T. HILL, KURT BUDD WENTZ, and FLOYD W. FREED are received, the CLERK IS **ORDERED** to send a copies of said affidavits to the applicant's counsel: Mr. Roland Brice Moore, III; 1314 Texas Avenue, Suite 1705; Houston, Texas 77002, and a copy to the Respondent: Eric Kugler; 1201 Franklin, 6th Floor; Houston, Texas 77002.

The COURT FURTHER **ORDERS** the Respondent and the applicant to file any proposed findings of fact within twenty (20) days after the affidavits of

: 00185

WAYNE T. HILL, KURT BUDD WENTZ, and FLOYD W. FREED are filed.
Upon the expiration of time to file the proposed findings of fact, the Clerk shall
submit all the documents material to this cause to this Court.

The Clerk of the Court is **ORDERED NOT** to transmit at this time any
documents in the above-styled case to the Court of Criminal Appeals until further
ordered by this Court.

SIGNED this 12th day of November, 2001.

MICHAEL WILKINSON
Presiding Judge
179th District Court

3

# Exhibit 22

NO. 800112-A

IN THE COURT OF CRIMINAL APPEALS OF TEXAS
AUSTIN, TEXAS

F I L E D
CHARLES BACARISSE
District Clerk

FEB 2 1 2002

Time:_____
Harris County, Texas

By_____
Deputy

IN THE 179TH JUDICIAL DISTRICT COURT OF
HARRIS COUNTY, TEXAS

EX PARTE CHARLES MAMOU, JR.

MOTION FOR EVIDENTIARY HEARING

Comes Now the Petitioner, Charles Mamou, Jr., Applicant herein, by and

through his attorney, Roland Brice Moore III, and prays that the Court will set this

matter for an evidentiary hearing.  Applicant contends that there is a need for an

evidentiary hearing because the principal issues in his case involving the deficient

performance of trial and appellate counsel cannot be adequately explored without

the testimony and cross-examination of the aforesaid previous counsel.  Moreover,

neither trial counsel has filed an affidavit in this case regarding the presence or

absence of trial strategy with respect to the errors and omissions at trial.  Such

testimony is a *sine qua non* of a fair resolution of Applicant's claims.

Respectfully submitted,

ROLAND BRICE MOORE III
ATTORNEY FOR APPLICANT
1314 Texas Ave. Suite 1705
Houston, Texas 77002
713  229-8500
State Bar No. 14388100

*talk to Roland on*
*6/30/03 - still*
*need hearing*

: 00165

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Motion was delivered to Mr. Baldwin Chin, assistant district attorney assigned to the above-captioned Court, on this the 21st day of Feb., 2002, by placing it in his box at the Harris County District Clerk's Office, and by faxing it to him at his office at 201 Fannin, Houston, Texas 77002.

_____
ROLAND BRICE MOORE III

# Exhibit 23

| | § | |
|---|---|---|
| **STATE OF TEXAS** | § | |
| | § | |
| **COUNTY OF HARRIS** | § | |
| | § | |

**BEFORE ME,** the undersigned authority, appeared Tom Moran, a person

known unto me, and after being duly sworn, he deposes:

My name is Tom Moran. I am over 18 years of age, I have never been convicted of a felony and I am fully competent to make this affidavit. All facts contained herein are true and correct of my personal knowledge unless I state otherwise.

I am an attorney licensed to practice law in Texas. I was first licensed in May 1984. I also am licensed to practice before the Supreme Court of the United States, the United States Court of Appeals for the Fifth Circuit, the United States District Courts for the Northern, Eastern, Southern and Western Districts of Texas and the United States Army Court of Military Review (Currently the United States Army Court of Criminal Appeals). I also am admitted to practice before, and I have practiced before, the International Criminal Tribunal for the Former Yugoslavia in The Hague, The Netherlands.

I have represented numerous persons in habeas corpus proceedings in death penalty cases both before the Texas courts and in federal court. I have been either the attorney of record or assisted in several direct appeals in capital murder cases in which the death penalty has been assessed. I have been an attorney at the trial level in three capital murder cases in which the State sought the death penalty. I have attended numerous continuing legal education seminars on death penalty litigation, including the litigation of death penalty cases on habeas. I taught at seminars on capital murder cases sponsored by the District Judges Trying Criminal Cases in Harris County. I am certified to accept appointments in death penalty cases, both at the trial and the appellate

1

level, in Harris County and I am certified by the Texas Court of Criminal Appeals for the representation of indigent habeas corpus applicants pursuant to TEX. CODE CRIM. PROC. ANN. art. 11.071 (Vernon Supp. 2001).

I have been requested by the habeas attorney for Charles Mamou to review a portion of the record and the application for writ of habeas corpus and to give an opinion whether the trial attorneys for Mr. Mamou were ineffective in his trial in *State v. Mamou,* No. 800112 in the 179th Judicial District Court of Harris County, Texas. In that trial, Mr. Mamou was charged with capital murder and was sentenced to death. In giving my opinion on whether trial counsel were ineffective, I am applying the standard announced by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984).

I am relying on the following facts as the basis for my opinion. These facts were provided to me by the Applicant's habeas counsel. The facts I am relying on in arriving at my opinion are in a draft of the habeas petition which are attached to this affidavit and incorporated herein by reference. The documents provided to me by habeas counsel are pages number 3-18 and attached hereto.

For purposes of this affidavit, the most important facts (although not the only facts upon which I rely) are that the Applicant was charged, indicted and tried only for the capital murder of Mary Carmouche and that the State presented evidence as to the victim-impact related to "victims" other than Mary Carmouche. I also am relying on the fact that the State failed to disclose that it intended to introduce victim impact evidence related to those persons.

It is my opinion that following *Cantu v. State,* 939 S.W.2d 627 (Tex. Crim. App.), *cert. denied,* 522 U.S. 994 (1997), no reasonably well qualified lawyer would fail to object to the admission of so-called "extraneous victim impact testimony" in a Texas capital murder trial. In this regard, I am relying on the fact that *Cantu* was decided by the Court of Criminal Appeals on January 29, 1997, and Applicant was tried

2

for an offense committed on December 6, 1998, about 22 months *after* the *Cantu* opinion was released by the Court of Criminal Appeals and approximately one-year after the Supreme Court of the United States denied certiorari on December 1, 1997.

It is well-settled that an attorney, to provide effective assistance of counsel, must have a firm grasp of the facts of the case and the applicable law. An attorney cannot make strategic decisions in the absence of a firm grasp of the applicable law. And, if he makes strategic or tactical decisions in the absence of a firm grasp of the law, those decisions should not be entitled to deference.

It is my opinion based on the facts given to me that trial counsel's performance was deficient in failing to take all efforts to prevent the State from introducing victim impact evidence on a "victim" who is not named in the indictment. That is the clear holding of *Cantu* and no attorney who represented a defendant in a capital murder case in which the State was seeking the death penalty could have a firm grasp of the applicable law unless he was familiar *Cantu*. In my opinion, trial counsel's failure to object to the admission of that testimony constitutes deficient performance for purposes of *Strickland*.

Trial counsel's performance was deficient for another, related reason. The State failed to comply with a proper discovery request for the information related to victim impact evidence. If there was a proper discovery request and the State failed to disclose, then it was error for the trial court to admit the evidence for a reason unrelated to *Cantu*. If there was no proper discovery request or no ruling, trial counsel's performance was deficient for failing to make a proper request. And, if there was a proper request, trial counsel's performance was deficient for failure to object to the evidence when it was offered.

There could be no rational strategic reason for failure to object to the inadmissible extraneous victim impact evidence. Nothing in the testimony could possibly have helped the defendant and the testimony was highly prejudicial. In my opinion, any proffered "strategic reason"

3

for failing to object to the admission of the evidence or the failure to attempt to exclude it in a hearing outside the jury's presence would be simply a rationalization for a mistake or a failure to know the law. This is especially true if the reason is something like "I do not like to object in front of the jury," because the issue could have been decided in a hearing outside the presence of the jury.

Without knowing more of the facts of the case, I cannot say definitively whether the error meets the prejudice prong of *Strickland*.

_____
TOM MORAN

**SWORN TO AND SUBSCRIBED BEFORE ME ON THIS** *5* **DAY OF**

**2001.**

_____
**NOTARY PUBLIC FOR**
**THE STATE OF TEXAS**

NCEMI INFANTE
Notary Public, State of Texas
My Commission Expires
08-03-2001

4

# Exhibit 24

# AFFIDAVIT OF CLAUDIA MILTON

My name is Claudia Milton. I live at 138 MacArthur Dr., in Sunset, LA. I moved to Sunset in 1959 and have known Charles Mamou, Jr., (Chucky) and his family for a long time. I am competent in every way to make this statement.

I was never contacted by Charles Mamou, Jr., attorneys about providing any information about Charles, Jr., prior to his trial. Had I been asked I would have provided the following information and been willing to testify to this at his trial.

Chucky was a respectable boy and a fine young man. I worked as a cook at Sunset Elementary School where Chucky attended. He was a quiet little boy and mainly kept to himself. To my knowledge, he did not have any behavior problems in school and his grades were either average or above average.

When Chucky was older he would often talk to my son about his problems. My son was on drugs and Chucky would try advise him to do better things with his life. I wanted my son to be more like Chucky.

There was times when I went shopping and Chucky was in the grocery store, he would buy my groceries and never wanted any money back. There were many other people in town that Chucky would help buy groceries, pay rent or their electric bill. Chucky helped people.

_Claudia Milton_
Claudia Milton

SIGNED under oath before me on this the 27th day of May 2007.

_Joseph L. Lane_
NOTARY PUBLIC
STATE OF LOUSIANA    #45856

# Exhibit 25

**Affidavit of Christopher Terrill Mamou**

My name is Christopher Terrill Mamou. I live at 402 Bradford Drive in Carencro, LA. My date of birth is July 7, 1977. I am the younger brother of Charles Harold Mamou, Jr. (Chucky). I am presently 29 years old and competent in every way to make this statement.

I was never contacted by Charles, Jr.'s, attorneys about providing any information about Charles, Jr., prior to his trial. Had I been asked I would have provided the following information and been willing to testify to this at his trial.

Growing up, I can always remember my brother being there and looking out for me. We are about two and a half years apart, which means a lot of the things we went through, we went through together. We were the only boys in the house for the first five years of my life before there was another boy in the house. The gap between ourselves and our younger brother was so that it was only natural that we were close to each other.

As far as I can remember my father, Charles Sr., never lived with us. I knew he was my father. I knew where he lived, which was in Houston, Texas. For me to say Charles, Sr., had a very important part in the development of me, as a child, would be a dishonest statement. The credit for my raising would go to Charles Jr., it was he, who taught me how to walk with my head up high. It was usually Charles, Jr., who would help me. It was he who took me to the basketball court and tried to teach me how to play. So, I think it would only be right for me to say Charles, Jr., was my father-figure. With me feeling obligated to my brother, I felt it was only natural for me to try to impress Charles, Jr. I would look for acceptance from him no matter what I was doing i. e., academically, in sports, or any recreational event, Charles, Sr., would every now and then make a contribution to my cause, but only after he broke several promises before keeping one. Charles, Jr., encouraged me to excel in school by rewarding me with praises and benefits, such as, paying for my way to the neighbor dance if I had a good report. A nice gesture I would say, but nothing would compare to the feeling of just making him proud which also encouraged me to do well.

In April 1989, I found out how Charles, Jr., had been sponsoring me. I say sponsoring me, but actually at this time he was also helping out with four other siblings. I can not honestly say what he told my mother about where the money was coming from. All I knew was he had his own money and he shared it with everyone - family, friends, or a stranger who needed help. I saw this and wanted to do the same thing. I approached him about making my own money and was denied. Remembering his reasoning was that this was not for everybody. He did not want me to get involved. Without him knowing, I managed to find someone else who was willing to invest in me. What I believed helped me to hide my identity was the resemblance I had to my brother. There were several times when someone was dealing with me they were calling me by my brother's name. When he found out I can say he was a bit disappointed.

1

Time had passed and I grew up. I felt I could not be deterred. My mother found out later about my business and confronted me about my ventures. Shortly after, a couple months before my seventeenth birthday, I found myself moving out of my mother's home due to her disapproval.

Christopher Terrill Mamou

SIGNED under oath before me on this the 26th day of May 2007.

NOTARY PUBLIC
STATE OF LOUSIANA    #45856

WITNESS

WITNESS

# Exhibit 26

## AFFIDAVIT OF MARK BENOIT

My name is Mark Benoit. I live at 188 Sunset Strip, Lot #2, Sunset, LA. My date of birth is 10-17-61. I am a friend of Charles Mamou, Jr., (Chucky). I am 45 years old and competent in every way to make this statement.

I was never contacted by Charles, Jr.'s, attorneys about providing any information about Charles, Jr., prior to his trial. Had I been asked I would have provided the following information and been willing to testify to this at his trial.

I moved to Sunset, LA in 1993. I met Chucky in the "streets" and clubs. I never seen him sold or use drugs. I did hear from people he sold drugs.

To me, Chucky does not have a "rough bone" in his body.

I have witnessed him paying bills for friends, family members and other people in the community.

Charles Jr. , is a friend that everyone wishes to have once in their life. What Charles Jr., was convicted of, I, Mark Benoit still hope this is a bad dream, which I would eventually wake up from. Charles Jr., is a child of God. If it was the dope that put Charles, Jr., behind bars, I pray that everyone in the world would burn the dope, and start praying, because all they have to do is look at Charles Jr., life now. I am sorry, I can not say much more. May God bless Charles Jr., and his family.

_Mark L. Benoit_
Mark A. Benoit


SIGNED under oath before me on this the __26__ day of __May__ 2007.

*58204

_Theo Domengeaux_
NOTARY PUBLIC
STATE OF LOUSIANA

# Exhibit 27

# DECLARATION OF SONJA DEE RAFEET

I, Sonja Dee Rafeet, hereby declare as follows:

1. My name is Sonja Dee Rafeet. I am over the age of 21 and am competent to make this declaration.

2. I am a licensed private investigator and I have worked on the Charles Mamou, Jr. Case in state court. My business address is P.O. Box 111506, Houston, Texas 77293. My business phone number is 713-869-7300; my FAX number is 713-868-3850. My Texas private investigator license number is A-08232. I am one of less than 50 persons in Texas who have achieved a Texas Certified Investigator Certification.

3. I am a member of Texas Certified Investigators; Texas Association of Licensed Investigators; Texas Criminal Defense Lawyers Association and the California and Florida Associations of Licensed Investigators, and several other professional associations.

4. I worked as an investigator on the Charles Mamou case in state court under the direction of attorney David Sergi, who prepared a successive state habeas petition. Many of my proposed areas of investigation were not pursued in state habeas proceedings, and there remain a significant number of loose ends and unperformed essential tasks in the case. Mr. Sergi ultimately did not pay me for much of the work I performed.

5. For instance, the Houston Police Department disciplinary records of the officers testifying at the 1999 trial have not been examined. I believe this is necessary because it is my understanding that at least one HPD officer, Ralph Saldivar, was terminated from HPD after his testimony at Mamou's trial. Officer Saldivar was a fingerprint expert who testified that Mamou's prints were on the newspaper clippings allegedly used to simulate currency.

6. Numerous fact witnesses need to be interviewed, including Deon Holley, Kevin Walter, Samuel Johnson, Howard Scott, and Terrence Dobson. Mr. Dobson is especially important because his testimony linked Mamou to the killing of Mary Carmouche.

7. The criminal and arrest records of the above individuals need to be obtained, with special emphasis on their criminal history at the time of trial. This could aid in a claim of ineffective assistance of trial counsel for failing to adequately inform the jury of their unreliableness as witnesses and also to ascertain whether they were the recipients of any favorable deals by the district attorney in return for their testimony.

8. A jury list needs to be created and it needs to be ascertained whether any excluded venire members were African-American, for purposes of a claim of ineffective assistance of counsel for failing to assure a fair and impartial jury for Mr. Mamou's trial.

9. I believe that an individual named Carl Deal, a Ft. Bend County former police officer, needs to be interviewed as information received by me during the course of the investigation has led me to believe he has helpful information on this case.

10. I believe an individual named Larry Feinstein, a Houston private investigator, needs to be located and interviewed, as he has refused to cooperate because of issues with Mr. Sergi, and may be willing to cooperate now.

11. I believe that a complete family chronology and social history need to be

compiled and used for mitigation purposes. This fundamental document was not produced for purposes of the trial, and Mr. Mamou's disadvantaged and, although some of Mr. Mamou's family and relatives did testify at trial, his poverty-stricken background in Sunset, Louisiana was not fully presented.

12. An individual named Kenneth Duplechan ("Skin") needs to be investigated as I believe his criminal background may be relevant to the actual innocence claim.

13. During my investigation in state court, I talked with Howard Scott's wife, Robin Scott. She became extremely upset when recounting how the Houston police had harassed her and her husband prior to Mamou's trial. She was so upset at their harassment that she became very emotional during the interview, and was yelling and shouting. We did not have time to obtain an affidavit from her and she needs to be re-interviewed. Her husband was a crucial witness as the testimony was that Mamou returned to her apartment after the failed drug transaction with the victim Mary Carmouche.

14. During this investigation, I also talked to Terrence Dobson's mother. She told me that the police were constantly following her son and harassing her son and trying to make sure that Terrence would testify against Mamou at his trial. I was not able to obtain an affidavit from her and she needs to be re-interviewed.

15. Martha Mamou Allen is Mamou's aunt. She is also Terrence Dobson's mother's sister. She needs to be interviewed regarding deals or harassment of Dobson prior to Mamou's trial.

16. A time-line for all of the main witnesses for the weekend of the shootings and disappearance of Mary Carmouche was not prepared for trial. This is necessary to show the opportunity of other witnesses to have played a part in the disappearance and murder of Ms. Carmouche.

17. The crucial ballistics testimony linking Mamou to the murder of Mary Carmouche was never effectively challenged either at trial or in Mr. Sergi's successive state writ. It was my understanding that a ballistics expert was going to be retained, but none ever was.

18. These are only some of the areas of proposed investigation that I believe are necessary in this case and it is only a partial list.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief, and that this declaration was executed on *September 3*, 2014 in *Houston*, Texas.

SONJA DEE RAFEET

# Exhibit 28

| THE STATE OF TEXAS | § | IN THE 179thDISTRICT |
|---|---|---|
| | § | |
| VERSUS | § | COURT OF HARRIS |
| | § | |
| CHARLES MAMOU | § | COUNTY, TEXAS |

## **MOTION FOR THE APPOINTMENT OF A BALLISTICS EXPERT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

Now comes CHARLES MAMOU, defendant in the above styled and numbered cause, by and through his attorney of record, and respectfully moves this Honorable Court to appoint a private investigator to assist him in the preparation of his defense, and for good cause shows the following:

I.

Defendant is charged with the felony offense of capital murder. The undersigned has been appointed as habeas counsel.

II.

Based on his limited investigation in this case, the undersigned counsel knows that there are potential issues involving the ballistics work done in this case by the Harris County Police Department. This work can only be reviewed properly and effectively through the use of a ballistics expert.

III.

Appointment of a ballistics expert is necessary to insure that defendant receive his rights to effective assistance of counsel, cross-examination and confrontation, and compulsory process, guaranteed by the Sixth and Fourteenth Amendments to the United

States Constitution and Article I, § 10 of the Texas Constitution; due process and due course of law, guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, §§ 13, 19 and 29; and, equal protection of the law, guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, §§ 3 and 3a of the Texas Constitution. Perry v. Lynaugh, 109 S.Ct. 2934 (1984); Ake v. Oklahoma, 105 S. Ct. 1087 (1985.)

IV.

Appointed counsel is entitled to reimbursement for reasonable expenses incurred with prior court approval for purposes of investigation. Tex. Code Crim. Proc. Ann. Art. 26.05(a).

V.

Undersigned counsel was appointed to represent the defendant because of his indigence. This indigence prevents defendant from hiring a ballistics expert to assist in his defense.

VI.

Defendant requests that the Court appoint Max Courtney, Forensic Consultant Services, 1216 S. Henderson, Ft. Worth, Texas 76104, Telephone: 817 870 1710. The Court had previously authorized the retention of Dr. James Booker, but Dr. Booker was unable to perform the work due to his schedule.

**WHEREFORE, PREMISES CONSIDERED**, defendant prays that this Court appoint a ballistics expert to assist him in the preparation of his defense and that the Court order the County Auditor to pay the costs of such investigative services.

Respectfully submitted,

ROLAND BRICE MOORE III
ATTORNEY FOR PETITIONER
1314 Texas Ave. Suite 1705
Houston, Texas 77002
Phone: 713  229-8500
Pager: 713 519 7823
State Bar No. 14388100

NO. 896075

| THE STATE OF TEXAS | § | IN THE 351st DISTRICT |
|---|---|---|
| | § | |
| VERSUS | § | COURT OF HARRIS |
| | § | |
| CHARLES MAMOU | § | COUNTY, TEXAS |

## ORDER

On this the 1st day of Oct, 2003 came on to be heard defendant's **Motion for the Appointment of a Ballistics Expert** to assist in the preparation of the defense.

This Court, after having read the pleadings and heard argument of counsel, is of the opinion that said motion should be granted:

It is therefore **ORDERED, ADJUDGED and DECREED** that Max Courtney, Forensic Consultant Services, 1216 S. Henderson, Ft. Worth, Texas 76104, (Telephone: 817 870 1710) is hereby appointed as the investigator for the defendant.

SIGNED on this the 1st day of Oct., 2003.

_____
JUDGE PRESIDING