# 73708

## NO. 73,708

## IN THE COURT OF CRIMINAL APPEALS

## FOR THE STATE OF TEXAS

## AT AUSTIN

\* \* \*

## CHARLES MAMOU JR

*Appellant*

*vs.*

## THE STATE OF TEXAS

*Appellee*

\* \* \*

## APPELLANT'S BRIEF

On Appeal in Cause No. 800,112
from the 179th Judicial District Court of Harris County, Texas

FLOYD W. FREED, III
6630 Cypresswood Dr., Suite 200
Spring, Texas 77379
Telephone: (281) 374-8886
Fax: (281) 379-6916
State Bar No. 07413500
ATTORNEY FOR APPELLANT
(ON APPEAL ONLY)

## ORAL ARGUMENT REQUESTED

FILED IN
COURT OF CRIMINAL APPEALS

SEP 0 1 2000

Troy C. Bennett, Jr., Clerk

NO. 73,708


## IN THE COURT OF CRIMINAL APPEALS
## FOR THE STATE OF TEXAS
## AT AUSTIN

\* \* \*

### CHARLES MAMOU JR

*Appellant*

*vs.*

### THE STATE OF TEXAS

*Appellee*

\* \* \*

### APPELLANT'S BRIEF

---

On Appeal in Cause No. 800,112
from the 179th Judicial District Court of Harris County, Texas

---

FLOYD W. FREED, III
6630 Cypresswood Dr., Suite 200
Spring, Texas 77379
Telephone: (281) 374-8886
Fax: (281) 379-6916
State Bar No. 07413500
ATTORNEY FOR APPELLANT
(ON APPEAL ONLY)


### ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

**PAGE**

INDEX OF CASES AND AUTHORITIES........................................................................iii

LIST OF ALL PARTIES ...........................................................................................vi

STATEMENT REGARDING ORAL ARGUMENT .........................................................2

PRELIMINARY STATEMENT .....................................................................................3

STATEMENT OF THE CASE .......................................................................................4

POINT OF ERROR ONE................................................................................................9

**THE TRIAL COURT REVERSIBLY ERRED IN DENYING APPELLANT'S OBJECTION TO THE ASSISTANT DISTRICT ATTORNEY SPECULATING THAT THE LEGISLATURE OF THE STATE OF TEXAS COULD LESSEN APPELLANT'S PAROLE ELIGIBILITY OF 40 YEARS**

POINT OF ERROR TWO............................................................................................13

**THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT THE CONVICTION OF CAPITAL MURDER IN THAT THE STATEOF TEXAS FAILED TO PROVE KIDNAPPING BEYOND A REASONABLE DOUBT**

POINT OF ERROR THREE..........................................................................................17

**THE EVIDENCE IS FACTUALLY INSUFFICIENT TO SUPPORT THE CONVICTION OF CAPITAL MURDER IN THAT THE STATEOF TEXAS FAILED TO PROVE KIDNAPPING BEYOND A REASONABLE DOUBT**

POINT OF ERROR FOUR............................................................................................21

**THE TRIAL COURT REVERSIBLY ERRED IN DENYING THE DEFENDANT'S REQUESTED CHARGE OF FALSE IMPRISONMENT**

i

POINT OF ERROR FIVE .................................................................... 23

**THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT THE CONVICTION OF CAPITAL MURDER IN THAT THERE IS NOT SUFFICIENT COOBERATION TO ACCOMPLICE TESTIMONY**

POINT OF ERROR SIX .................................................................... 27

**THE EVIDENCE IS FACTUALLY INSUFFICIENT TO SUPPORT THE CONVICTION OF CAPITAL MURDER IN THAT THERE IS NOT SUFFICIENT COOBERATION TO ACCOMPLICE TESTIMONY**

POINT OF ERROR SEVEN .................................................................... 31

**THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THE PROBABILITY THAT APPELLANT WOULD CONSTITUTE A CONTINUING THREAT TO PRISON SOCIETY FOR 40 YEARS AND/OR THAT AFTER THAT TIME, IF RELEASED, HE WOULD CONSTITUTE A CONTINUING THREAT TO FREE SOCIETY**

POINT OF ERROR EIGHT .................................................................... 41

**THE TRIAL COURT REVERSIBLY ERRED IN DENYING DEFENDANT'S REQUESTED CHARGE THAT REQUIRED EXTRANEOUS OFENSES BE PROVED BY THE STATE OF TEXAS BEYOND A REASONALBE DOUBT**

CONCLUSION AND PRAYER FOR RELIEF .................................................................... 43

CERTIFICATE OF SERVICE .................................................................... 43

# INDEX OF CASES AND AUTHORITIES

## TEXAS CASES

*Clewis v. State*,
    922 S.W.2d 126, 129 (Tex.Crim.App. 1996)(en banc)
    (citing *Stone v. State*, 823 S.W.2d 375, 381
    (Tex.App.-Austin 1992, pet.ref'd) ) ................................................. 17,27

*Ex Parte Elizondo*,
    947 S.W.2d 202, 205 (Tex.Crim.App. 1997)..................................... 13,23

*Fuentes v. State*,
    991 S.W.2d 267, 272 (Tex.Crim.App. 1999)................................. 17,27,41

*Geesa v. State*,
    820 S.W.2d 154, 156 (Tex.Crim.App. 1991)(en banc)...................... 13,23

*Jackson v. Virginia*,
    443 U.S. 307, 308, 99 S.Ct. 2781, 2789 (1979) ............................... 13,23

*Reed v. State*,
    991 S.W.2d 354, 358 (Tex.App.-Corpus Christi 1999, no pet.hist.)
    citing *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997) ................... 17,27

*Staley v. State*,
    887 S.W.2d 885, 888 (Tex.Crim.App. 1994)..................................... 13,23

*Mason v. State*,
    905 S.W. 2nd 570 (Tex.Crim.App.1995)........................................... 15,20

*Ex Parte Gutierrez*,
    600, S.W. 2nd 933, 935 (Tex.Crim.App.1980)...................................... 21

*Muniz v. State*,
    851, S.W. 2d 238, 254 (Tex.Crim.App.1993) *cert denied*
    510 U.S. 837, 126 L. Ed 2d 82, 114 S.Ct. 116 (1993) ........................... 21

*Alamanza v. State*,
    686, S.W. 2d 157 (Tex.Crim.App.1984)............................................... 21

*Kunkle v. State,*
    S.W. 2d 435, 439 (Tex.Crim.App.1986) *cert denied*
    114, S. Ct. 122 (1987) ....................................................................... 25,29

*Harris v. State,*
    S.W. 2d 447 (Tex.Crim.App.1983) .................................................... 25,29

*Russell v. State,*
    598, S.W. 2d 238 (Tex.Crim.App.1980) *cert denied*
    449 U.S. 1003, 101 S.Ct. 54, 66 L. Ed. 2d 300 (1981) ..................... 25,29

*Carillo v. State,*
    591 S.W. 2d 876 (Tex.Crim.App.1979) ............................................. 25,29

*Rivera v. State,*
    990 S.W. 2d 882 (Tex.App. - Austin 1996) ....................................... 25,30

*Goff v. State,*
    931, S.W. 2d 537, 544 (Tex.Crim.App.1996) .................................... 25,30

*McDuff v. State,*
    939 S.E. 2d 607, 612 (Tex.Crim.App.1997) .................................. 26,30,38

*Valencia v. State,*
    966 S.W. 2d 81 (Tex.Crim.App. 1997)
    966 S.W. 2d 188 (Tex.Crim.App. - Houston
    (1st district) 1998) *pet. refused* ........................................................... 11

*Simmons v. South Carolina,*
    512 U.S. 154, 165, S.Ct. 2187 2194, 129 2d 133 (1994) ................... 11,39

*Stoker v. State,*
    788 S.W. 291, 7 (Tex.Crim.App.1989)
    *cert denied* U.S. 951 (1990) ................................................................ 35

*Rodney v. State,*
    632 S.W. 2d 598, 661 (tex.Crim.App.1982) ........................................ 35

*Keeton v. State,*
    724, S.W. 2d 58, 61 (Tex.Crim.App.1987) .......................................... 36

*Cain v. State*
  958 S.W. 2d 404 407, 408-9................................................................. 17,27,28

*Haskins v State,*
  960 S.W. 2d 207, 209 (Tex.Crim.App.-Corpus Christi 1997)
  citing *Sharp v State,* 707 S.W. 2d 611,614 (Tex.Crim.App. 1986)
  *cert denied,* 488 U.S. 872, 109 S.Ct. 190 (1998) ............................... 18,28

*Barnes v. State,*
  876 S.W. 2d 316 (Tex.Crim.App.1994) ................................................. 36

*Robinson v. State,*
  548 S.W. 2d 63, 64 (Tex.Crim.App.1977) ............................................. 36

*Nenno v. State,*
  970 S.W. 29, 549 (Tex.Crim.App.1998) ................................................ 37

*McGinn v. State,*
  961 S.W. 2d 161, 176 (Tex.Crim.App.1998) .......................................... 40

*Kutzner v. State,*
  994 S.W. 2d 180, 188 (Tex.Crim.App.1999) .......................................... 41

*Tong v. State,*
  ------2d-----No: 73,058 (Tex.Crim.App. April 13, 2000) ........................ 41

## TEXAS RULES OF APPELLATE PROCEDURE

Rule 74 (a) .......................................................................................... vi
Rule 39.1 ............................................................................................. 2

## PENAL CODE

Section 7.02 (a) (2) ....................................................................... 25,30
Section 19.03(2) ..................................................................... 14,18,24,28

## VERNON'S ANNOTATED CODE OF CRIMINAL PROCEDURE

Article 37.071 ............................................................................... 35,42
Article 36.14 ..................................................................................... 21
Article 38.14 ..................................................................................... 30
Article 44.29 ..................................................................................... 42

## LIST OF ALL PARTIES

Pursuant to Tex.R.App.P. 74(a), a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of this case.

**Appellant**

> **CHARLES MAMOU JR**
> TDCJ-ID Inmate, Death Row

**Complainants Named in Indictment, Deceased**

> **MARY CARMOUCHE**

**Defense Attorneys at Trial**

> **WAYNE HILL**
> 4615 Southwest Freeway
> Houston, Texas 77025
> Tel: 713 623 8312
> SBN: 59656300

> **KURT WENTZ**
> 5629 FM 1960
> Houston, Texas 77069
> Tel: 281 587 0088
> SBN: 21179300

**Prosecutors at Trial**

> **MR LYN MCCLELLAN**
> SBN: 13396100
> **MS CLAIRE CONNORS**
> SBN: 0470500
> 1201 Franklin, Suite 600
> Houston, Texas 77002
> Tel: 713 755 5800

**Presiding Judge**

### HONORABLE J. MICHAEL WILKINSON
179TH District Court
1201 Franklin Street
Houston, Texas 77002

**District Attorney - Prosecutor on Appeal**

### JOHN B. HOLMES, JR.
District Attorney
1201 Franklin,  Suite 600
Houston, Texas 77002

**Attorney on Appeal**

### FLOYD W. FREED, III
6630 Cypresswood Dr., Suite 200
Spring, Texas 77379
Telephone: (281) 374-8886
State Bar No. 07413500

NO. 73,708

# IN THE COURT OF CRIMINAL APPEALS
# FOR THE STATE OF TEXAS
# AT AUSTIN

\* \* \*

## CHARLES MAMOU JR

*Appellant*

*vs.*

## THE STATE OF TEXAS

*Appellee*

\* \* \*

## APPELLANT'S BRIEF

---

On Appeal in Cause No. 800,112
from the 179TH Judicial District Court of Harris County, Texas

---

TO THE HONORABLE JUDGES OF THE COURT CRIMINAL APPEALS:

NOW COMES, CHARLES MAMOU JR, Appellant herein, by and through his appointed attorney on appeal only, FLOYD W. FREED, III, and files this his Appellant's Brief in this capital murder case. In support thereof, he would respectfully show the Court the following:

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Tex.R.App.P. 39.1, the Appellant does request oral argument.

## PRELIMINARY STATEMENT

This is an automatic appeal from Appellant's capital murder conviction and death sentence.  Art. 37.071(h), V.A.C.C.P.

In the complaint filed on December 10th 1998, Appellant was charged with capital murder in the course of committing and attempting to commit kidnapping alleged to have been committed on December 7th 1998 (C.R. pp. 2-3). Appellant was arrested and held without bond.  The grand jury indicted Appellant on March 3rd 1999 (C.R. p. 4).

Upon his plea of not guilty, Appellant was tried and convicted of capital murder (R.R. Vol 21, p.60).

The jury answered the two statutory special issues "Yes" and "No" resulting in the mandatory imposition of the death penalty (R.R. Vol 24, p. 49). There was motion for new trial (C.R. p. 109).  The motion was overruled by operation of law.

Counsel was appointed on appeal and Appellant's brief is timely filed by placing in the United States Mail on August 30th, 2000.

3

## STATEMENT OF THE CASE

The evidence adduced at trial by the State of Texas and the Defendant revealed the following to the Judge and Jury:

On or about December 6th 1998, the Defendant, Charles Mamou Jr, contacted Kevin Walter by telephone as he and Dion Holley and Terrance Gibson were at a basketball court (R.R. Vol 16, pp. 26-27). The substance of the conversation was for the sale and purchase of one kilo of cocaine for $20,000. The Defendant played the role of the purchaser. A meeting was arranged at Northline Mall in Houston, Harris County, Texas. Mr Walter and Mr Holley arrived in a blue Lexus which belonged to a parent, while Terrance Gibson arrived in another car for protection (R.R. Vol 16, pp. 28-29). Mr Mamou arrived in a red vehicle with Samuel Johnson and Terrance "Tater" Dodson (R.R. Vol 16, pp. 32-33). No deal was consummated and various meetings were held at assorted locations in an effort to complete the transaction, but without success. The lack of success was due to the fact that neither the alleged sellers nor buyers had cocaine nor the money. Mr Walter stated that their goal was to see the money, count the money and take the money (R.R. Vol 16, p. 165).

After the futile attempts, Mr Walter, Mr Gibson and Mr Holley went to the complainant, Mary Carmouche's residence. She joined them in the blue Lexus. Subsequently another meeting was arranged by cellphone at Bennigan's where the Defendant and Samuel Johnson met again with them (R.R. Vol 16, pp. 44-45).

4

After eating, the blue Lexus containing Mr Walter, Mr Gibson, Mr Holley and Miss Carmouche followed Mr Johnson and Mr Mamou in their red car. After another parking lot rendezvous, the cars arrived at a dark area on Lantern Point Drive, Houston, Texas. The cars were parked nose to nose (R.R. Vol 16, pp. 48-53). Mr Mamou exited the vehicle holding a Victoria's Secret bag which was purported to contain money, but actually contained cut up newspapers. He approached the back of the Lexus where Terrance Gibson stood (R.R. Vol 20, pp. 189-190). Mr Holley and Mr Johnson were at the front of the cars. After brief negotiations, Mr Gibson raised his shirt and the Defendant saw a gun handle in his waist. Mr Mamou turned to run and fired his gun behind him (R.R. Vol 20, pp. 192-193). He saw Mr Walter go back to the Lexus and he shot Mr Walter (R.R. Vol 20, pp 196-197). During this time frame, Mr Johnson drove off in the red car and left Mr Mamou behind (R.R. Vol 20, p. 200). As a result, Mr Mamou took the blue Lexus, which contained the complainant, Mary Carmouche, in the back seat (R.R. Vol 20, pp. 201-202).

Mr Mamou testified that as he drove down the street Mr Johnson drove past him in the red car. He followed him to the Fondren Court apartments (R.R. Vol 20, pp. 204-205). Miss Carmouche was released at the apartment. Mr Mamou testified that the last time he saw Miss Carmouche she was with Mr Johnson and another person known as Kevin or "Skin" (R.R. Vol 20, pp. 148-152).

On December 8th 1998, Alex Longoria, an employee of Houston Light and Power, discovered Mary Carmouche dead in the backyard of a vacant house (R.R. Vol 18, pp. 125-131).   Dr Roger Milton, Assistant Medical Examiner of Harris County, Texas testified that Mary Carmouche had died of a gunshot wound to the right side of her chest (R.R. Vol 20, p. 53).   He further testified that Terrance Gibson died of a gunshot to the left side of his chest (R.R. Vol 20, p. 64).   Terrance "Tater" Dodson who participated in the early attempts to effectuate the narcotics transaction along with Mr Mamou testified for the State of Texas.   He admitted their intent was "a lick for a key" or theft of the hoped for cocaine (R.R. Vol 19, p. 166).   However, Mr Dodson was not present at the shooting.   He did testify that Mr Mamou admitted to him the shooting   of Miss Carmouche the next day (R.R. Vol 19, p. 180).

After testimony from the State's witnesses and the Defendant, each side rested.

The Defendant, Charles Mamou Jr was found guilty of capital murder as charged in his indictment (R.R. Vol 21, p. 60).

At the punishment phase the State of Texas called Dr Eric Beyer, a resident doctor who attended to Mr Kevin Walter, to explain the extent of his injuries (R.R. Vol 22, pp. 3-18). Troy James Hibert, a Louisiana State Trooper, testified to Mr Mamou's arrest in 1996 for possession of a firearm (R.R. Vol 22, pp.18-36).

Steve Hooper, a Houston Police Officer testified to a shooting on September 5th 1998 wherein cut up newspapers were found at the scene (R.R. Vol 22, pp. 37-52). Joseph Malacon testified to being present on September 5th 1998 with Mr Mamou when he met Anthony Roy Williams also known as "Bruiser". He related that the Defendant and Mr Williams left together and the "Bruiser" was found shot shortly thereafter (R.R. Vol 22, pp. 61-105).

Dr Roger Milton, an Assistant Medical Examiner testified that Anthony Roy Williams died from a gunshot to the lower back (R.R. Vol 22, pp. 105-112).

Yolanda Williams testified as a family member of Anthony Roy Williams (R.R. Vol 22, pp. 112-123).

Patricia Gibson, mother of Terrance Gibson, testified as to the effect on her family from Terrance's death (R.R. Vol 22, pp. 124-138).

Janus Martin Carmouche related the effects of the death of Mary Carmouche on his family (R.R. Vol 22, pp, 138-156).

The State of Texas rested (R.R. Vol 22, p. 156).

The Defendant called to testify Dr Walter Quijano, a Psychologist, as an expert on prison life in the Texas Department of Criminal Justice Institutions Division (R.R. Vol 22, pp. 157-187).

Dorothy Morgan, a Parole Supervisor for the Texas Parole Office described the parole process as applied to a person serving a life sentence for capital murder (R.R. Vol 23, pp. 3-19).

7

David Wayne Green (R.R. Vol 23, pp. 31-26), Angelica Mary Johnson Mamou (R.R. Vol 22, pp. 36-71), Michelle Mamou (R.R. Vol 22, pp. 72-79), Sedonia Marie Stock (R.R. Vol 23, pp. 80-92), Joseph Dwight Savoie (R.R. Vol 23, pp. 93-115) and Charles Mamou Sr (R.R. Vol 23, pp. 115-133) testified for the Defendant in respect to his family life and relationships.

The Defendant rested (R.R. Vol 23, p. 133).

The jury found the answers to Special Issue No 1 was yes and Special Issue No 2 to be No (R.R. Vol 24, pp. 49-50). The Court thereupon, according to the law, sentenced the Defendant to Death (R.R. Vol 24, p. 51).

## POINT OF ERROR ONE

**THE TRIAL COURT REVERSIBLY ERRED IN DENYING APPELLANT'S OBJECTION TO THE ASSISTANT DISTRICT ATTORNEY SPECULATING THAT THE LEGISLATURE OF THE STATE OF TEXAS COULD LESSEN APPELLANT'S PAROLE ELIGIBILITY OF 40 YEARS**

### Arguments and Authorities

After the Appellant had been found guilty of capital murder, the Defendant Charles Mamou Jr called to testify on his behalf, Dorothy Morgan. (R.R. Vol 23, pp. 2-19). Ms Morgan was a parole supervisor for the Southern Region Institutional Parole Office. In essence, her testimony regarded the parole process as applied to a person convicted of capital murder and sentenced to life in prison. In pertinent part, she testified that such a person convicted in October of 1999 would be required to serve forty flat years before eligible parole (R.R. Vol 23, p. 13). Further, a two-third majority of the 18 number parole board would have to vote for a prisoner's parole (R.R. Vol 23, p. 14).

After counsel for Appellant passed Ms Morgan, he approached the court to assert an oral Motion in Limine to preclude the State of Texas from cross examining the witness relating to changes in parole law and those things that might be considered as speculation (R.R. Vol 23, p.15) The court denied the Motion (R.R. Vol 23, p.15).

Immediately thereafter, the State began a series of questions calculated to inform the jury of changes in non capital parole law (R.R. Vol 23, pp. 15-16).

Thereafter, the State asked Ms Morgan "So today, as we sit here today, a person so convicted of capital murder and receives a life sentence must serve forty calendar years?"

9

The witness replied "That is right".  The State then asked " You are not implying to this jury are you, that that could never be changed?"  Trial counsel immediately objected "It calls for speculation on the part of this witness, Your Honor".  The trial court stated "It's overruled"  Therefore the State elicited the following:

Q: You're not implying to the Jury they could never be changed are you?

A: Well, I couldn't tell the jury that it would be or would not be.  I'm just saying, I know today.  And no, I cannot tell that.

Q: All right.  Because that's not always been the law.  Forty years day–for-day has not always been the law.  It's a pretty recent situation.

A: That is true; however, it was less time.  It was thirty-five.

Q: And before that it was even less time, wasn't it?  Even before that, it was a life sentence, you might get out in eight or nine years?

A: Could be.  Not capital felony.

Q: Are you sure about that?

A: I'm not an attorney, no I wouldn't say.

Q: You said that the – so you cannot guarantee the ladies and gentlemen of the jury that forty years, calendar years, day-for-day, will never be changed.  You can't assure us of that, can you?

A: I can only tell the jury what it is today.

Q: I understand, which means that you cannot assure us it can never be changed?

A: Right.

Q: You indicated that the goal of the parole division, the first goal, is to protect society?

A: True.

The trial court charged the jury at punishment (C.R. pp. 95-103). The charges contained specific language regarding parole eligibility being contingent on the Defendant serving forty (40) calendar years without consideration of good conduct time (C.R. p. 198).

The cross examination of the State of Texas was contrary to law applicable to the Defendant's case and invited the jurors to disregard the law, *Valencia v State*, 966 S.W. 2d 81 (Tex.Crim.App. 1997) and *Valencia v State*, 966 S.W. 2d 188 (Tex.Crim.App – Houston (1st Dist) 1998, *pet refused)* (opinion on remand).

Such questioning was a blatant effort for the jurors to disregard their instructions and violate their oaths in answering the continuing threat special issue and the mitigation special issue.

In *Simmons v South Carolina*, 512 U.S. 154, 165, 114 S. Ct. 2187,2194, 129 2. Ed 2d 133 (1994) the United States Supreme Court recognized that due process mandated that a capital defendant be able to refute a prosecutor's erroneous argument with truthful sentencing information. To permit the State's questioning herein is to enable the State to speculate in every case that any sentence does not have meaning and should be ignored because the Legislature meets every two years and could change the law at any time they desired to do so.

The Defendant was irreparably harmed and in violation of his constitutional rights by the series of questions and responses elicited by the State of Texas. It is simply common

11

sense and judicially recognized that jurors will reasonably believe that a Defendant who is even eligible for parole is a greater threat to society than one who is confined in prison and ineligible for parole.

Appellant is entitled to a new punishment hearing because the trial court's error in permitting the State of Texas's speculative questions on parole revision by the Legislature.

## POINT OF ERROR TWO

**THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT THE CONVICTION OF CAPITAL MURDER IN THAT THE STATE OF TEXAS FAILED TO PROVE KIDNAPPING BEYOND A REASONABLE DOUBT**

### Argument and Authorities

In order to assess the legal sufficiency of the evidence, a court must consider whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" *Jackson v Virginia*, 443 U.S. 307,308,99 S.Ct. 2781 (1979); *Staley v State*, 887 S.W. 2d 885, 888 (Tex.Crim.App. 1994); *Geesa v State*, 820 S.W. 2d 154, 156 (Tex.Crim.App.1991) (enc banc).   When conducting a legal sufficiency of the evidence review, an appellate court does "not weigh the evidence tending to establish guilt against the evidence tending to establish innocence". *Ex parte Elizondo*, 947 S.W. 2d 202, 205 (Tex.Crim.App. 1997).   Nor does the court seek to assess the credibility of the witnesses on either side. See *Id.*   The court "view(s) the evidence in a manner favorable to the verdict of guilty ..... no matter how powerful the exculpatory evidence may seem .... or how credible the defense witnesses may appear" *Id.*   So long as "the inculpatory evidence standing alone is enough for rational people to believe in the guilt of the defendant, (the court) simply (does) not care how much credible evidence is on the other side". *Id.* at 205-206.

## Statement of Underlying Facts

The Appellant was indicted for capital murder (C.R. p. 4). Therein the State of Texas alleged the death of Mary Carmouche while in the course of committing the kidnapping of Mary Carmouche in the first paragraph per Section 19.03 (a) (2) of the Penal Code. The jury was charged in the law applicable hereto (C.R. pp. 78-91).

The events alleged by the State of Texas to constitute kidnapping begin with the aborted narcotics transaction on or about December 7th 1998. Miss Carmouche was a passenger in the backseat of a blue Lexus (R.R. Vol 16, pp. 62-63). She was with Kevin Walter, Terrance Gibson and Dion Holley. Both cars were parked nose to nose. Mr Gibson and Mr Holley got out of the Lexus to meet Mr Mamou who arrived in a red car with Samuel Johnson. Mr Walter was driving the Lexus and stayed in the car. From the rear of the Lexus Mr Walter heard gun shots (R.R. Vol 16, pp.64-65). As he attempted to drive off, Mr Mamou passed by and shot him in the shoulder through the window. Mr Mamou opened the car door and shot Mr Walter in the stomach and then in the chest. Mr Walter struck Mr Mamou in the face and took off running (R.R. Vol 16, pp. 65-66). He ran past Terrance Gibson laying on the ground and picked up his gun. When he looked up he saw Mr Mamou jump into the car and sped off (R.R. Vol 16, pp. 66-67). It was the last time he saw Mary Carmouche or Charles Mamou (R.R. Vol 126, p.67).

The other witness for the State of Texas as to the actual events was Dion Holley who fled when he heard gun shots, but did not relate events regarding Mary Carmouche other than her disappearance (R.R. Vol 18, pp. 3-124).

14

Samuel Johnson, the driver of the red car Mr Mamou arrived in, also testified for the State of Texas. He related a similar version of the events and heard a lot of gun shots (R.R. Vol 19, p. 39). After the shooting he saw Mr Mamou get into the Lexus and speed off (R.R. Vol 19, pp. 42-43). He testified that he never saw Mr Mamou or the girl again (R.R. Vol 19, p. 43).

Mary Carmouche was found shot once in the chest by Alex Longview, a meter reader for Houston Light and Power, on December 8th 1998 (R.R. Vol 18, pp. 125-131).

Dr Roger Milton, Assistant Medical Examiner of Harris County Texas testified that Mary Carmouche died of a gunshot to her right side (R.R. Vol 20, pp. 49-77).

The evidence adduced by the State of Texas as to the kidnapping of Mary Carmouche is in essence that she was a passenger in a blue Lexus during raging gunfire who occupied the car as the defendant fled the scene. She was found dead the next day from a single gunshot.

In *Mason v State*, 905 S.W. 2nd 570 (Tex.Cr.App. 1995), this court addressed a sufficiency question as to the same offense. Therein the court stated that "a kidnapping becomes a completed offense when a restraint is accomplished and there is evidence that the actor intended to do so by either secretion of the use or thereafter use of deadly force" at p. 575. Further, the State had the burden to prove a restraint was completed and that the Defendant evidenced a specific intent to prevent liberation by either secretion or deadly force.

In *Mason, Supra,* the Appellant hogtied and gagged his wife and put her in the closed

15

trunk of a car where she could not escape or be seen, in order to transport her to a river. In contrast herein, the Appellant did nothing to restrain Mary Carmouche. She was merely present in the backseat of the Lexus apparently hiding from the gunfire. He only realized her presence at the first stop sign (R.R. Vol 20, pp. 200-203). Mr Mamou testified that he tried to get her out of the car and she declined (R.R. Vol 20, pp. 203-204). In addition, Mr Mamou testified that she went to the Fondren Court Apartments with him where he last saw her with Samuel Johnson (R.R. Vol 20, p.152).

There is insufficient evidence to factually sustain the conviction in that the offense of kidnapping has not been proved beyond a reasonable doubt. Her presence in the car used by Mr Mamou to flee for his safety  (R.R. Vol 20, p. 200) is not sufficient for the offense of kidnapping.

# POINT OF ERROR THREE

**THE EVIDENCE IS FACTUALLY INSUFFICIENT TO SUPPORT THE CONVICTION OF CAPITAL MURDER IN THAT THE STATE OF TEXAS FAILED TO PROVE KISNAPPING BEYOND A REASONALBE DOUBT**

## Argument and Authorities

In his second point of error, the Appellant argues that the evidence is factually insufficient to support his conviction. The Appellant contends that the verdict was contrary to the weight of the evidence and clearly unjust.

A factual sufficiency review requires the appellate court to view "all of the evidence without the prism of 'in the light most favorable to the prosecution'" *Clewis v State*, 922 S.W. 2d 126, 129 (Tex.Crim.App. 1996) (en banc) (citing *Stone v State*, 823 S.W. 2d 375, 381 (Tex.App. - Austin 1992, pet. ref'd)). The Court of Appeals will set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust," Id., ie: the verdict is shocking to the conscience, or it is clearly biased. *Id* at 135. See *Fuentes v State*, 991 S.W. 2d 267, 272 (Tex.Crim.App.1999). "A Court of Appeals may not reverse a jury's decision simply because it disagrees with the result; the appellate court must defer to jury findings, and may find the evidence factually insufficient only where necessary to prevent manifest injustice" *Reed v State,* 991 S.W. 2d 354, 358 (Tex.App. - Corpus Christi 1999, no. pet.hist), citing *Cain v State*, 958 S.W. 2d 404, 407 (Tex.Crim. App. 1997). Further, in conducting a factual sufficiency review, it is within the sole province of the jury to determine the weight to be accorded to contradictory testimonial evidence because 'it turns on an evaluation of credibility and

17

demeanour" *Cain,* 958 S.W. 2d 404 at 408-9.

Since the jury must judge the credibility of the witnesses and determine the weight to be given to their testimony, "the jury may choose to believe or disbelieve all or any part of any witness's testimony". *Haskins,* 960 S.W. 2d 207, 209 (Tex.App.-Corpus Christi 1997) citing *Sharp v State,* 707 S.W. 2d 611, 614 (Tex.Crim.App.1986). cert denied, 488 U.S. 872, 109 S.Ct. 190 (1988) The jury was entitled to believe a witness's version of events, and to disbelieve the appellant.

The evidence presented at trial was factually insufficient and the Appellant's point of error should be upheld.

## Statement of Underlying Facts

The Appellant was indicted for capital murder (C.R. p. 4). Therein the State of Texas alleged the death of Mary Carmouche while in the course of committing the kidnapping of Mary Carmouche in the first paragraph per Section 19.03 (a) (2) of the Penal Code. The jury was charged in the law applicable hereto (C.R. pp. 78-91).

The events alleged by the State of Texas to constitute kidnapping begin with the aborted narcotics transaction on or about December 7th 1998. Miss Carmouche was a passenger in the backseat of a blue Lexus (R.R. Vol 16, pp. 62-63). She was with Kevin Walter, Terrance Gibson and Dion Holley. Both cars were parked nose to nose. Mr Gibson and Mr Holley got out of the Lexus to meet Mr Mamou who arrived in a red car with Samuel Johnson. Mr Walter was driving the Lexus and stayed in the car. From the rear of the Lexus Mr Walter heard gun shots (R.R. Vol 16, pp.64-65). As he attempted to drive off,

18

Mr Mamou passed by and shot him in the shoulder through the window.  Mr Mamou opened the car door and shot Mr Walter in the stomach and then in the chest.  Mr Walter struck Mr Mamou in the face and took off running (R.R. Vol 16, pp. 65-66).  He ran past Terrance Gibson laying on the ground and picked up his gun.  When he looked up he saw Mr Mamou jump into the car and sped off  (R.R. Vol 16, pp. 66-67).

It was the last time he saw Mary Carmouche or Charles Mamou (R.R. Vol 126, p.67).

The other witness for the State of Texas as to the actual events was Dion Holley who fled when he heard gun shots, but did not relate events regarding Mary Carmouche other than her disappearance (R.R. Vol 18, pp. 3-124).

Samuel Johnson, the driver of the red car Mr Mamou arrived in, also testified for the State of Texas.  He related a similar version of the events and heard a lot of gun shots (R.R. Vol 19, p. 39).  After the shooting he saw Mr Mamou get into the Lexus and speed off (R.R. Vol 19, pp. 42-43).  He testified that he never saw Mr Mamou or the girl again (R.R. Vol 19, p. 43).

Mary Carmouche was found shot once in the chest by Alex Longview, a meter reader for Houston Light and Power, on December 8th 1998 (R.R. Vol 18, pp. 125-131).

Dr Roger Milton, Assistant Medical Examiner of Harris County Texas testified that Mary Carmouche died of a gunshot to her right side (R.R. Vol 20, pp. 49-77).

The evidence adduced by the State of Texas as to the kidnapping of Mary Carmouche is in essence that she was a passenger in a blue Lexus during raging gunfire who occupied the car as the defendant fled the scene.  She was found dead the next day from a single

19

gunshot.

In **Mason v State**, 905 S.W. 2nd 570 (Tex.Cr.App. 1995), this court addressed a sufficiency question as to the same offense. Therein the court stated that "a kidnapping becomes a completed offense when a restraint is accomplished and there is evidence that the actor intended to do so by either secretion of the use or thereafter use of deadly force" at p. 575. Further, the State had the burden to prove a restraint was completed and that the Defendant evidenced a specific intent to prevent liberation by either secretion or deadly force.

In *Mason, Supra*, the Appellant hogtied and gagged his wife and put her in the closed trunk of a car where she could not escape or be seen, in order to transport her to a river. In contrast herein, the Appellant did nothing to restrain Mary Carmouche. She was merely present in the backseat of the Lexus apparently hiding from the gunfire. He only realized her presence at the first stop sign (R.R. Vol 20, pp. 200-203). Mr Mamou testified that he tried to get her out of the car and she declined (R.R. Vol 20, pp. 203-204). In addition, Mr Mamou testified that she went to the Fondren Court apartments with him where he last saw her with Samuel Johnson (R.R. Vol 20, p.152).

There is insufficient evidence to factually sustain the conviction in that the offense of kidnapping has not been proved beyond a reasonable doubt. Her presence in the car used by Mr Mamou to flee for his safety (R.R. Vol 20, p. 200) is not sufficient for the offense of kidnapping.

## POINT OF ERROR FOUR

**THE TRIAL COURT REVERSIBLY ERRED IN DENYING THE DEFENDANT'S REQUESTED CHARGE OF FALSE IMPRISONMENT**

After the State of Texas and the Defendant rested and closed in the guilt/innocence phase of the trial, the Defendant by and through his counsels of record objected to the court's charge pursuant to Article 36.14 of the Code of Criminal Procedure, for not including False Imprisonment also known as Unlawful Restraint pursuant to Section 20.02 of the Penal Code. The trial court denied the requested charge (R.R. Vol 21, p.3).

False Imprisonment is a lesser included offense of kidnapping. *Ex Parte Gutierrez,* 600 S.W. 2nd 933, 935 (Tex.Crim.App. 1980).

Appellant's testimony and the State's evidence as more fully set forth in Issues No. 1 and No. 2 herein, where the sufficiency of kidnapping is raised and adopted by reference herein as set forth verbatim, clearly develops facts sufficient to justify such a defensive theory. When evidence from any source raises a defensive issue, and the Defendant properly requests a jury charge on that issue, then the trial court must submit the issue to the jury, *Muniz v State,* 851 S.W. 2nd 238, 254 (Tex.Crim.App. 1993) cert. denied 510 U.S. 837, 126 L. Ed 2nd 82, 114 S. Ct 116 (1993).

The trial court erred in refusing the requested charge and in applying the "some harm" in *Alamanza v State,* 686 S.W. 2nd 157 (Tex.Crim.App. 1984) it is clear that Mr Mamou was harmed when the jury was deprived of an appropriate consideration of false imprisonment to the facts of Mr Mamou driving the Lexus away from the scene with Miss Carmouche in the back seat of the car.

21

The error and resulting harm to Charles Mamou requires reversal of his conviction herein pursuant to the Rules of Appellate Procedure.

## POINT OF ERROR FIVE

**THE EVIDENCE IS LEGALLY INSUFFICIENT TO SUPPORT THE CONVICTION OF CAPITAL MURDER IN THAT THERE IS NOT SUFFICIENT COOBERATION TO ACCOMPLICE TESTIMONY**

### Argument and Authorities

In order to assess the legal sufficiency of the evidence, a court must consider whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" *Jackson v Virginia*, 443 U.S. 307,308,99 S.Ct. 2781 (1979); *Staley v State*, 887 S.W. 2d 885, 888 (Tex.Crim.App. 1994); *Geesa v State*, 820 S.W. 2d 154, 156 (Tex.Crim.App.1991) (enc banc).   When conducting a legal sufficiency of the evidence review, an appellate court does "not weigh the evidence tending to establish guilt against the evidence tending to establish innocence". *Ex parte Elizondo*, 947 S.W. 2d 202, 205 (Tex.Crim.App. 1997).   Nor does the court seek to assess the credibility of the witnesses on either side. See *Id*.   The court "view(s) the evidence in a manner favorable to the verdict of guilty ..... no matter how powerful the exculpatory evidence may seem .... or how credible the defense witnesses may appear" *Id*.   So long as "the inculpatory evidence standing alone is enough for rational people to believe in the guilt of the defendant, (the court) simply (does) not care how much credible evidence is on the other side". *Id*. at 205-206.

## Statement of Underlying Facts

The Appellant was indicted for capital murder (C.R. p. 4). Therein the State of Texas alleged the death of Mary Carmouche while in the course of committing the kidnapping of Mary Carmouche in the first paragraph per section 19.03 (a) (2) of the Penal Code.

The jury was charged on the law applicable hereto (C.R. pp. 78-91). The evidence adduced by the State of Texas as to the death of Mary Carmouche is confined to her last being seen alive in the blue Lexus being driven away from the shootings by Mr Mamou (R.R. Vol 16, p. 67).

Miss Carmouche was found dead in a backyard by Alex Longview, a meter reader for Houston Light and Power on December 8th 1998 at approximately noon at 9227 Lynchester, Houston, Texas (R.R. Vol 18, pp. 125-131).

Dr Roger Milton, Assistant Medical Examiner testified that Miss Carmouche died from a single gun shot to her chest (R.R. Vol 20, p. 56).

The only evidence which relates directly to Mr Mamou's shooting of Miss Carmouche exists solely in the testimony of Terrance Dodson.

Mr Dodson is a cousin of the Appellant who was a participant in the efforts by Mr Mamou and Mr Johnson to steal cocaine (R.R. Vol 19, pp. 165-167). After a few failed attempts, Mr Dodson was taken home (R.R. Vol 19, p. 172). However Mr Dodson knew that the alleged purchase of cocaine was false and the intent was to rob them of cocaine (R.R. Vol 19, 186-189). In furtherance thereof, Mr Dodson carried a gun (R.R. Vol 19, p. 187).

After Mr Mamou returned to Louisiana, Mr Dodson spoke by telephone with Mr Mamou wherein he alleges that Mr Mamou told him that he had shot her (R.R. Vol 19, pp. 177-182). However, Mr Dodson could not relate any other facts surrounding the location of the shooting except an allegation of oral sex. (R.R. Vol 19, pp. 180-182).

The court in his charge of guilt/innocence did charge on the law of an accomplice, but did not do so as to Terrance Dodson (C.R. pp. 86).

Herein, an accomplice is someone who has participated with someone else before, during or after the commission of a crime. *Kunkle v State,* S.W. 2d 435, 439 (Tex.Crim.App. 1986), *cert denied,* 114 S.Ct. 122 (1987); *Harris v State,* S.W. 2d 447 (Tex.Crim.App. 1983); *Russell v State,* 598 S.W. 2d 238 (Tex.Crim.App. 1980), *cert denied,* 449 U.S. 1003, 101 S.Ct. 54, 66 L. Ed. 2d 300 (1981); *Carillo v State,* 591 S.W. 2d 876 (Tex.Crim.App. 1979).

Clearly, Mr Dodson is criminally responsible for he acted with the intent to promote or assist the commission of the above robbery. See Section 7.02 (a) (2) of the Penal Code. *Rivera v State* 990 S.W. 2d 882 (Tex.App. – Austin 1999). Further, a Defendant's criminal responsibility may be enlarged to include acts for which he may not be the primary or principal actor. *Goff v State,* 931 S.W. 2d 537, 544 (Tex.Crim.App. 1996), *cert denied,* 520 U.S. 1171, 117 S. Ct. 1438, 137 L Ed 2d 545 (1997). It was foreseeable that murder may occur during the course of a robbery with a gun, of Kevin Walter, Dion Holley and Terrance Gibson.

Herein, the State of Texas did not corroborate the testimony of Mr Dodson, pursuant to

Article 38.14 of the Code of Criminal Procedure.  In applying the test set forth in *McDuff v State,* 939 S.E. 2d 607, 612 (Tex.Crim.App. 1997) the testimony of Mr Dodson is removed and the State of Texas is left with Miss Carmouche last being seen with Mr Mamou as he drove away.  Such mere evidence is sufficient to support a conviction of murder.

Consequently, Appellant's conviction for capital murder should be reversed and dismissed.

# STATEMENT OF ERROR SIX

## THE EVIDENCE IS FACTUALLY INSUFFICIENT TO SUPPORT THE CONVICTION OF CAPITAL MURDER IN THAT THERE IS NOT SUFFICIENT COOBERATION TO ACCOMPLICE TESTIMONY

### <u>Argument and Authorities</u>

In his fifth point of error, the Appellant argues that the evidence is factually insufficient to support his conviction. The Appellant contends that the verdict was contrary to the weight of the evidence and clearly unjust.

A factual sufficiency review requires the appellate court to view "all of the evidence without the prism of 'in the light most favorable to the prosecution'" *Clewis v State*, 922 S.W. 2d 126, 129 (Tex.Crim.App. 1996) (en banc) (citing *Stone v State*, 823 S.W. 2d 375, 381 (Tex.App. - Austin 1992, pet. ref'd)). The Court of Appeals will set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust," *Id.*, ie: the verdict is shocking to the conscience, or it is clearly biased. *Id* at 135. See *Fuentes v State*, 991 S.W. 2d 267, 272 (Tex.Crim.App.1999). "A Court of Appeals may not reverse a jury's decision simply because it disagrees with the result; the appellate court must defer to jury findings, and may find the evidence factually insufficient only where necessary to prevent manifest injustice" *Reed v State*, 991 S.W. 2d 354, 358 (Tex.App. - Corpus Christi 1999, no. pet.hist), citing *Cain v State*, 958 S.W. 2d 404, 407 (Tex.Crim. App. 1997). Further, in conducting a factual sufficiency review, it is within the sole province of the jury to determine the weight to be accorded to contradictory testimonial evidence because "it turns on an evaluation of credibility and

27

demeanour" *Cain*, 958 S.W. 2d 404 at 408-9.

Since the jury must judge the credibility of the witnesses and determine the weight to be given to their testimony, "the jury may choose to believe or disbelieve all or any part of any witness's testimony". *Haskins*, 960 S.W. 2d 207, 209 (Tex.App.– Corpus Christi 1997) citing *Sharp v State*, 707 S.W. 2d 611, 614 (Tex.Crim.App.1986) *cert denied*, 488 U.S. 872, 109 S.Ct 190 (1988). The jury was entitled to believe a witness's version of events and to disbelieve the appellant.

The evidence presented at trial was factually insufficient, and the Appellant's point of error should be upheld.

## Statement of Underlying Facts

The Appellant was indicted for capital murder (C.R. p. 4). Therein the State of Texas alleged the death of Mary Carmouche while in the course of committing the kidnapping of Mary Carmouche in the first paragraph per section 19.03 (a) (2) of the Penal Code.

The jury was charged on the law applicable hereto (C.R. pp. 78-91). The evidence adduced by the State of Texas as to the death of Mary Carmouche is confined to her last being seen alive in the blue Lexus being driven away from the shootings by Mr Mamou (R.R. Vol 16, p. 67).

Miss Carmouche was found dead in a backyard by Alex Longview, a meter reader for Houston Light and Power on December 8th 1998 at approximately noon at 9227 Lynchester, Houston, Texas (R.R. Vol 18, pp. 125-131).

Dr Roger Milton, Assistant Medical Examiner testified that Miss Carmouche died from a

single gun shot to her chest (R.R. Vol 20, p. 56).

The only evidence which relates directly to Mr Mamou's shooting of Miss Carmouche exists solely in the testimony of Terrance Dodson.

Mr Dodson is a cousin of the Appellant who was a participant in the efforts by Mr Mamou and Mr Johnson to steal cocaine (R.R. Vol 19, pp. 165-167).  After a few failed attempts, Mr Dodson was taken home (R.R. Vol 19, p. 172).  However Mr Dodson knew that the alleged purchase of cocaine was false and the intent was to rob them of cocaine (R.R. Vol 19, 186-189).  In furtherance thereof, Mr Dodson carried a gun (R.R. Vol 19, p. 187).

After Mr Mamou returned to Louisiana, Mr Dodson spoke by telephone with Mr Mamou wherein he alleges that Mr Mamou told him that he had shot her (R.R. Vol 19, pp. 177-1820.  However, Mr Dodson could not relate any other facts surrounding the location of the shooting except an allegation of oral sex (R.R. Vol 19, pp. 180-182).

The court in his charge of guilt/innocence did charge on the law of an accomplice, but did not do so as to Terrance Dodson (C.R. pp. 86).

Herein, an accomplice is someone who has participated with someone else before, during or after the commission of a crime. ***Kunkle v State***, S.W. 2d 435, 439 (Tex.Crim.App. 1986), *cert denied*, 114 S.Ct. 122 (1987); ***Harris v State***, S.W. 2d 447 (Tex.Crim.App. 1983); ***Russell v State***, 598 S.W. 2d 238 (Tex.Crim.App. 1980), *cert denied*, 449 U.S. 1003, 101 S.Ct. 54, 66 L. Ed. 2d 300 (1981); ***Carillo v State***, 591 S.W. 2d 876 (Tex.Crim.App. 1979).

29

Clearly, Mr Dodson is criminally responsible for he acted with the intent to promote or assist the commission of the above robbery.  See Section 7.02 (a) (2) of the Penal Code. *Rivera v State* 990 S.W. 2d 882 (Tex.App. – Austin 1999).   Further, a Defendant's criminal responsibility may be enlarged to include acts for which he may not be the primary or principal actor. *Goff v State*, 931 S.W. 2d 537, 544 (Tex.Crim.App. 1996), *cert denied,* 520 U.S. 1171, 117 S. Ct. 1438, 137 L Ed 2d 545 (1997).  It was foreseeable that murder may occur during the course of a robbery with a gun of Kevin Walter, Dion Holley and Terrance Gibson.

Herein, the State of Texas did not corroborate the testimony of Mr Dodson, pursuant to Article 38.14 of the Code of Criminal Procedure.  In applying the test set forth in *McDuff v State*, 939 S.E. 2d 607, 612 (Tex.Crim.App. 1997) the testimony of Mr Dodson is removed and the State of Texas is left with Miss Carmouche last being seen with Mr Mamou as he drove away.  Such mere evidence is sufficient to support a conviction of murder.

Consequently, Appellant's conviction for capital murder should be reversed and dismissed.

## POINT OF ERROR SEVEN

**THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THE PROBABILITY THAT APPELLANT WOULD CONSTITUTE A CONTINUING THREAT TO PRISON SOCIETY FOR 40 YEARS AND/OR THAT AFTER THAT TIME, IF RELEASED, HE WOULD CONSTITUTE A CONTINUING THREAT TO FREE SOCIETY**

### <u>Summary of Argument</u>

This court must confront directly the nature of the State's burden of proof on the continuing threat special issue when the jury is informed that the defendant, if sentenced to life, will be in prison society for 40 years, at the end of which time he will be eligible for parole release into free society. Capital defendants have been unsuccessful thus far in convincing enough members of this Court that jurors asked to make this daunting prediction are entitled to know what society they are expected to protect at what time.

However, defense counsel have been very successful in convincing trial judges in Harris County (who bear a tremendous share of the burden of trying capital cases in this state) that the information is an indispensable component of a fair trial, from voir dire through closing argument. Appellant's is such a case. His jury had the information; they had evidence upon which to base their prediction. Appellant asks the court to acknowledge in its sufficiency review the facts and the law upon which the case was actually decided. If the jury knew it, this court must "know it" in reviewing their verdict.

The facts in this case were insufficient to convince a rational jury that, beyond a reasonable doubt, Appellant would commit criminal acts of violence that would constitute a continuing threat to prison society, where he would spend his life for 40

31

calendar years and/or that if he <u>were</u> to be released on parole at the first available opportunity, as a 64 year old man after 40 years incarceration, he would beyond a reasonable doubt probably commit criminal acts of violence that would constitute a continuing threat to free society.

There is an additional factor, unique to a Texas capital case, which the court must take into account in addressing sufficiency on the continuing threat issue when the jury has been given the 40 year information in the charge. The factor is this: in order to make the prediction about the defendant's dangerousness, or not, to "society", the jury must predict as accurately as they can what society he will be in and for how long. They were given the information, in this case, that he will be in prison for 40 years. So, the jurors may conscientiously apply the evidence they have heard to make the prison society prediction with confidence that they are considering the correct question.

However, once the jurors answer that question (which, Appellant submits, should always be answered "no" if the jury has heard evidence, as they did here, about prison controls) they still must answer the question of the defendant's potential for dangerousness to free society. He will, after all, be eligible for parole in 40 years, if he survives in prison that long.

Appellant submits that the jury may answer this question "no" if they are not convinced beyond a reasonable doubt there is a probability that the defendant, if released after 40 years incarceration would still be a threat as an old man. They may <u>also</u> answer the question "no" if the evidence leads them to believe that because of the nature of his crime

and his behavior prior to trial, or because of some mental condition, if any, which is untreatable or which he cannot be trusted to treat in a free world, the particular defendant would never be paroled. The jurors are not just entitled, they are required to predict whether the defendant will be in prison society or in free society, in order to fulfill their oath.

So, Appellant asks this court to recognize, as difficult as it may be and as paradoxical as it may sound, that the more dangerous a defendant appears, the less likely it is that he would ever be paroled. If a jury thinks the evidence shows that a defendant is non-dangerous as long as he is in prison and they believe from the evidence he would never actually be paroled into free society, they would find, necessarily, that he would not be a continuing threat to free society.

The conclusion that the most dangerous people among us will not be put to death under our system seems troubling until one considers that they will not be "among us". If free society and prison society will be protected by imprisonment of the dangerous defendant, without the necessity of executing him, surely that is a good thing. The jury's duty is to protect rather than to accord mercy or exact revenge, then the jurors have achieved the purpose of the law and fulfilled their oaths. Unless our desire is simply to execute the dangerous defendant, we should be satisfied with achieving the actual goal of the Texas death penalty scheme: the incapacitation of the dangerous defendant. The evidence in this case did not prove that it was necessary to execute Appellant.

## Statement of Facts

The State of Texas proved to the jury herein, although not admitted hereby by the Appellant, that he kidnapped and murdered Mary Carmouche. In addition, the jury heard of the shooting between parties, an alleged additional killing of Anthony Ray Williams. Mr Mamou was an admitted narcotics dealer in Louisiana. It was clear that Mr Mamou engaged in criminal activities.

Dr Walter Quijano testified at length about the TDCJ-ID system of diagnosis, classification, treatment, medication and security measures to nullify any threat. He also told the jury about the "aging out" phenomenon that applies statistically to persons in the Appellant's age group, showing a general reduction in violent tendencies with the mere passage of time (R.R. Vol 22, pp. 157-187).

Although the State "proved" numerous acts of misconduct or assaultive acts and none when he was in the Harris County jail awaiting trial, all those acts were not probative of his being a continuing threat.

## Arguments and Authorities

Again, Appellant says this court must address the sufficiency issue in the same way jurors addressed it, according to the 40 year information they were given. Did the State prove, first that Appellant would be a continuing threat to prison society for the next 40 years? Obviously they did not. Did they then prove that if he were released in the year 2032 or afterward he would be a threat to free society? They did not. Their evidence was simply inadequate as a predictor that after 40 years in prison Appellant would be –

beyond a reasonable doubt – a dangerous old man in the free world.

## General Standard for Prediction of Continuing Threat

Appellant is aware that when deciding whether there was sufficient evidence to support a jury's finding that there is a probability the defendant will commit criminal acts of violence that will constitute a continuing threat to society, this Court views the evidence in the light most favorable to the verdict to determine whether a rational trier of fact could have found the elements of Article 37.071(b)(2), V.A.C.C.P. beyond a reasonable doubt.  See *Stoker v State*, 788 S.W. 2d 1, 7 (Tex.Crim.App. 1989), *cert denied*, U.S. 951 (1990).

> "Prior criminal conduct, the age of the defendant and psychiatric evidence are among the various factors relevant in deciding the second punishment issue" *Rodney v State*, 632 S.W. 2d 598, 661 (Tex.Crim.App. 1982)

The Court has listed as relevant factors the following:

1.  the circumstances of the capital offense, including the defendants state of mind and whether he was working alone or with other parties
2.  the calculated nature of the defendant's acts
3.  the forethought and deliberateness exhibited by the crime's execution
4.  the existence of prior criminal record, and the severity of the prior crimes
5.  the defendant's age and personal circumstances at the time of the of the offense
6.  whether the defendant was acting under duress or the domination if another at the time of the offense
7.  psychiatric evidence and
8.  character evidence

35

*Keeton v State,* 724 S.W. 2d 58, 61 (Tex. crim.App. 1987).  See also
*Barnes v State,* 876 S.W. 2d 316 (Tex.Crim.App. 1994)

The Appellant acknowledges that this list, including the aforementioned prior criminal conduct, age and psychiatric evidence, is not an exhaustive one, but it has been, in practice the standard by which the court has judged sufficiency.  In 1977 the Court addressed what it considered to be relevant factors on the future dangerousness issue, and it is significant that every factor in that list is one that can be argued in Appellant's favor in this case, either as a factor that was not proven by the State, or as a factor that was proven by his own evidence:

> "This Court has stated that in determining the likelihood of whether or not a defendant would be a continuing threat to society, the jury could consider whether the defendant has a significant criminal record.  It would consider the range and the severity of his prior criminal conduct.  It could further look at the age of the defendant and whether or not at the time of the commission of the offense he was acting under duress or under the domination of another.  It could also consider whether the defendant was under an extreme form of mental or emotional pressure, something less, perhaps than insanity but more than the emotions of the average man, however inflamed, could withstand (Citations omitted).

See, *Robinson v State,* 548 S.W. 2d 63, 64 (Tex.Crim.App. 1977).

This list of factors must be viewed in a case like Appellant's in the context in which the jurors predicted the likelihood of his dangerousness certainly in one society for a definite period of time (40 years in prison society) and hypothetically in another society (after 40 years, perhaps in free society).

**Prison Society for 40 Years**

The circumstances of this offense were not proven to be duplicated or even approximated as a possibility in prison.

Dr Quijano's testimony showed, to put it briefly, that the prison system was well-equipped to handle "dangerous" prisoners, to identify them, classify them, treat them and if necessary, isolate them in order to incapacitate them while they were in prison society. He clearly testified that the prison system was designed to and <u>would</u> prevent dangerous persons from being a continual <u>threat</u> in that system.

In contrast to other cases, then, the State offered no psychiatric or other expert evidence to show that Appellant would be dangerous in prison society.  In *Nenno v State*, 970 S.W. 2d 549 (Tex.Crim.App. 1998) for example, an expert on the subject of sexual victimization of children testified that the appellant was a pedophile, a type of person difficult to rehabilitate, would be an extreme threat to society, especially to children within his age preference,  *Id.* at 552.  Because the court in *Nenno* did not mention the fact that there were no seven year old children in prison, or discuss whether the expert testified that 40 years was not long enough to rehabilitate a pedophile (or that particular pedophile) Appellant assumes that the jury in *Nenno* was not charged on the 40 year rule. (If they were, the opinion certainly should have discussed the expert's testimony with regard to the two different societies in question).

The age factor, as it applies to this question, weighs in Appellant's favor because although Appellant would live under control for 40 years in a different society, where the

evidenced showed he would not be allowed to be a continuing threat.

## Free Society After 40 Years

At the very least the Appellant could not be released into free society until he had been in prison society for 40 calendar years. The jury knew this. It makes no difference that the special issue number one did not ask as a separate question whether Appellant would be a danger in 40 years. This is clearly a matter the jurors were required to address because they knew Appellant would at least be eligible for parole release after 40 years. The special issue does ask the jury to assess the defendant's future dangerousness "as he sits here today" but only in the sense that the prediction must be made upon evidence available to the jury today as to whether the defendant will be a threat immediately as he goes into prison society today or whether he will be a threat as he sits in prison 40 years from today, asking to be released into free society. The jurors would be contradicting the law they received in the jury charge if they were to judge Appellant's dangerousness to free society "as he sits here today". The reality is that Appellant, like any other capital defendant does not just "sit there". He goes somewhere. Where does he go? Prison. How long does he stay there? For 40 years. Where does he go then? Perhaps into free society? Appellant does not complain that "society" was not defined. See *McDuff v State* 939 S.W. 2d 607, 620 (Tex.Crim.App. 1997). The jury knew from the 40 year charge exactly what society meant.

The promise of the 40 year rule is to protect free society. One supposes that the purpose of special issue number one is the protection of society as a whole, whether it is prison

38

society or free society.  If the State proved the defendant is a continuing threat to either society they are entitled to a yes answer for the protection of that society.  But what the State cannot do, given our law of mandatory incarceration for 40 years, is to obtain a verdict based upon insufficient proof.  It is a false promise, indeed a lie, to ask a jury to make a prediction that Appellant will be a threat now to free society when they are told that he is not going to be in that society for 40 years.

The reason the Supreme Court reversed the death sentence in *Simmons v South Carolina,* 512,U.S. 154,114 S.Ct. 2187, 129L.Ed.2d 133 (1994) was that the prosecutor asked the jury to sentence the defendant to death based upon a danger that did not exist, under South Carolina law.  He suggested to them that the defendant would be a danger to free society when in fact the life without parole law meant the defendant would never be in free society.  In this case, the jurors were free to assume from the evidence that he would never be in free society because he would never be paroled.

The State offered no evidence to prove or even suggest that Appellant would be unaffected by the passage of time, especially by the passage of 40 years prison time, during which he would receive treatment. they offered no expert or psychiatric evidence that his disorder, however violent its manifestations might have been, would, beyond a reasonable doubt, occur again if Appellant survived for 40 years and were released, or if he showed no recovery and were kept in prison.

If this court uses the cases holding that the facts of the crime alone can support a finding of future dangerousness, to make the sufficiency analysis in a case in which the jury is

charged on the 40 year rule, it must analyze the evidence to see if it does in fact answer

the question: where the facts of the crime applied in some way to the defendant's

dangerousness after he has spent 40 years in prison? If the Court does not take the 40

year fact into account, then it will indeed have reached a state of automatic affirmance as

feared by the opinion concurring and dissenting in *McGinn v State*, 961 S.W. 2d 161,

176 (Tex.Crim.App. 1998) Overstreet, J., concurring and dissenting.  Thus the presence

or absence of psychiatric or expert evidence which has been an important factor in past

cases assumes a special significance when the prediction as to free society is

acknowledged to be a 40 year prediction.

The State, which bore the burden of proof, gave the jury no evidence by which they could

apply the relevant factors to the 40 years-in-prison framework they were required to use.

They were given no evidence to inform the prediction they had to make, except by the

defense, and that refuting evidence showed Appellant would not be a continuing threat to

prison or free society.  Likewise, this court applying the same framework must find that

there was insufficient evidence upon which a rational juror could find beyond a

reasonable doubt that there was a probability Appellant would commit criminal acts of

violence that would constitute a continuing threat to either society.

Because the State failed to prove the continuing threat special issue under the applicable

jury instruction, the Court should reform Appellant's punishment to life in prison with its

applicable 40 year parole ineligibility requirement.

40

## POINT OF ERROR EIGHT

**THE TRIAL COURT REVERSIBLY ERRED IN DENYING DEFENDANTS REQUESTED CHARGE THAT REQUIRED THAT EXTRANEOUS OFFENSES BE PROVED BY THE STATE OF TEXAS BEYOND A REASONABLE DOUBT**

### Arguments and Authorities

The Defendant requested for a jury instruction to be given to the jury at the punishment phase of the trial which assigned a burden of proof beyond a reasonable doubt (R.R. Vol 24, p. 3). The trial court denied the request (R.R. Vol 24, p.3).

Appellant is mindful of the rulings of this honorable court in *Fuentes v State*, 991 S.W. 2d 267, 280 (Tex.Crim.App. 1999) and *Kutzner v State*, 994 S.W. 2d 180, 188 (Tex.Crim.App. 1999).

However, it is a significant issue for the jury to understand clearly that each extraneous offense is a separate offense and to be judged on its own merits and not to be assumed by the sheer weight and magnitude of the offense before it and the likely association that guilt will be inferred thereby. The fact that future dangerousness must be proved beyond reasonable doubt does not sufficiently explain the appropriate burden to the jury which does not have the expertise of trained counsel and the court in this incredibly serious context.

Appellant respectfully requests the court to readdress this issue especially in consideration of *Tong v State* S.W.--- 2d--- No. 73,058 (Tex.Crim.App. April 13 2000) which is pending before this court.

Appellant's sentence of death should be set aside and a new sentencing hearing be held

41

under 37.071 of the Code of Criminal Procedure as set forth in Article 44.29 of the Code of Criminal Procedure.

## CONCLUSION AND PRAYER FOR RELIEF

For the above and foregoing reasons, it is respectfully submitted that upon appellate review, the Court of Appeals should reverse the judgment of the Trial Court and dismiss or remand for a new trial either at guilt or punishment as appropriate herein.

Respectfully submitted,

FLOYD W. FREED, III
6630 Cypresswood Dr., Suite 200
Spring, Texas 77379
Telephone: (281) 374-8886
Fax: (281)379-6916
State Bar No. 07413500
ATTORNEY FOR APPELLANT
(ON APPEAL ONLY)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Brief of Appellant was delivered to the Office of the District Attorney of Harris County, Texas on the 30th day of August, 2000.

FLOYD W. FREED, III

43